# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### Western Division

Civil Action No.: 05-30110-MAP

JEFFREY A. MOULTON,
    Plaintiff,

    v.

GAIL L. PERLMAN, Individually and in her official capacity as
First Justice of the Hampshire County Probate and Family Court
of Massachusetts,
DAVID E. SULLIVAN, Individually and in his official capacity
as Hampshire County Register of Probate of Massachusetts,
WILLIAM M. O'RIORDAN, Individually and in his official
capacity as Chief Probation Officer of the Hampshire Probate
and Family Court of Massachusetts,
KEVIN M. MCDONALD, Individually and in his official capacity
as Probation Officer,
DENNIS HEALEY, Individually and in his official capacity as
Chief of Police for the Town of Ware, Massachusetts,
RANDY TOPOR, Individually and in his official capacity as a
Police Officer for the Town of Ware, Massachusetts,
LU-ANN J. ELDREDGE, Individually and in her official capacity
as a Police Officer for the Town of Ware, Massachusetts,
JAMES AYOTTE, Individually and in his official capacity as a
Police Officer for the Town of Ware, Massachusetts,
KIMPERLY S. MOULTON,
JOHN F. GALLAGHER,
ROBERT SANDERSON,
REGINA SANDERSON, AND
RICHARD PRIMAVERA,
    Defendants.

## DEFENDANT GAIL L. PERLMAN'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5) and 12(b)(6), the Defendant, Honorable

Gail L. Perlman ("Justice Perlman"), hereby moves the Court to dismiss the Plaintiff's

Complaint.  As grounds for this Motion, Justice Perlman states that the Complaint should be

dismissed because: (1) the Plaintiff has failed to effectuate service of process on the Defendant; (2) the Complaint fails to contain a short and plain statement of the facts and claims, and it alleges only conclusory violations of law, and, therefore, it should be dismissed due to the Plaintiff's failure to properly plead the action; (3) the Plaintiff's Complaint fails to set forth any allegations against Justice Perlman, and therefore, the Plaintiff has failed to set forth a claim upon which relief should be granted; (4) the Plaintiff lacks standing to bring this action both on his own behalf, as well as on behalf of others because he has failed to allege that he has suffered an "injury in fact" and that any of the alleged Constitutional and statutory violations personally involve him; (5) to the extent that the Plaintiff's Complaint is found to have asserted allegations against Justice Perlman, the Complaint should still be dismissed because Justice Perlman is absolutely immune from suit under the doctrine of judicial immunity; (6) since the Plaintiff's Complaint essentially seeks review of Massachusetts state courts' child custody determinations, the action is barred by the *Rooker-Feldman* doctrine, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); and (7) under the domestic relations exception to federal jurisdiction, an action that requires the federal court to consider issues of custody, child support payments, or "whether a previous court's determination on these matters should be modified" should be dismissed for lack of subject matter jurisdiction, *Rykers v. Alford*, 832 F.2d 895, 900 (5th Cir. 1987); *Ankenbrandt v. Richards*, 504 U.S. 689, 702-04 (1992).

As further grounds for this Motion, Justice Perlman relies on the attached Memorandum in support of this Motion.

WHEREFORE, the Defendant, Gail L. Perlman, respectfully request that this Honorable Court:

(1)     GRANT her Motion to Dismiss as to the Plaintiff's Complaint in all respects and

with prejudice; and

(2)     GRANT whatever additional relief the Court deems necessary and

appropriate.

## REQUEST FOR HEARING

Justice Perlman respectfully requests that this Court grant a hearing on this Motion as

provided by the Federal Rules of Civil Procedure.

Respectfully submitted,
DEFENDANT
GAIL L. PERLMAN,
By her attorneys,


/s/ Harvey Weiner_____

Dated:                                  Harvey Weiner, BBO #519840
Marjunette deMagistris, BBO #648133
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA  02110
(617) 951-2100


And


/s/ Timothy M. Jones_____
Timothy M. Jones, BBO# 618656
Assistant Attorney General
Western Division
1350 Main Street, 4th Floor
Springfield, MA 01103
(413)784-1240

## <u>CERTIFICATE OF SERVICE</u>

I, Marjunette deMagistris, certify that on this    day of September, 2005, I served the within document by first-class mail, postage pre-paid to:

Carole Sadowski Lynch, Esq.
Morrison Mahoney LLP
Towersquare Building Suite 2400
1500 Main Street
PO Box 15387
Springfield, MA 01115-5387

Regina Sanderson, *Pro Se*
264 Upper Church
Gilbersville, MA 01031

Nancy Frankel Pelletier, Esq.
Robinson Donovan, PC
1500 Main Street, Suite 1600
Springfield, MA 01115

Robert Sanderson, *Pro Se*
264 Upper Church
Gilbertsville, MA 01031


Jeffrey A. Moulton, *Pro Se*
33 Sorel Road
PO Box 994
Ware, MA 01082


Richard Primavera, *Pro Se*
9 Crescent Terrace
Ware, MA 01082

   /s/ Marjunette deMagistris
Marjunette deMagistris

PABOS2:MDEMAGI:619507_1
14926-91247

4

# **EXHIBIT 1**

# **EXHIBIT 2**

# **EXHIBIT 3**

# **EXHIBIT 4**

# **EXHIBIT 5**

# **EXHIBIT 6**

# **EXHIBIT 7**

# EXHIBIT 8

# **EXHIBIT 9**

# **EXHIBIT 10**

# **EXHIBIT 11**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RICHARD C. WEISS, etc., )
)
           Plaintiff, )
)
v. )    CIVIL ACTION NO.  2:04cv876-A
)
THE STATE OF ALABAMA, )
)
          Defendant. )

## MEMORANDUM OPINION

### I. FACTS AND PROCEDURAL HISTORY

This cause is before the court on a Motion to Dismiss (Doc. #14) filed by the Defendant, the State of Alabama.

The Plaintiff, Richard Weiss, brings six counts for relief against the State of Alabama. The State of Alabama has moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim.

For reasons to be discussed, the court concludes that the Motion to Dismiss is due to be GRANTED.

### II. MOTION TO DISMISS STANDARDS

#### A. Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." A "facial attack" on the complaint requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter

jurisdiction, while a "factual attack" challenges the existence of subject matter jurisdiction based on matters outside the pleadings. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

### B. Rule 12(b)(6)

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. Hishon, 467 U.S. at 73. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir. 1985).


### III. DISCUSSION

In addressing the Motion to Dismiss, the court first notes that Weiss has correctly pointed out that it is improper to consider materials outside of the complaint in ruling on a motion to dismiss pursuant to Rule 12(b)(6) without giving notice that the motion will be treated as a motion for summary judgment under Rule 56. A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, however, can be based on evidence. See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). Therefore, to the extent that the court considers materials

2

outside of the complaint in ruling on the Motion Dismiss, it will only be in connection with issues raised concerning lack of subject matter jurisdiction.

The State of Alabama has moved to dismiss Weiss' complaint in its entirety on the basis of Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

The Eleventh Amendment to the United States Constitution insulates a state from private parties seeking to impose liability which must be paid from the public funds in the state treasury. See Edelman v. Jordan, 415 U.S. 651, 663 (1974). Congress has not abrogated Eleventh Amendment immunity in § 1983 suits. See Quern v. Jordan, 440 U.S. 332, 341(1979). Furthermore, Alabama not only has not waived its immunity to § 1983 suits, but has expressly claimed immunity in the Alabama Constitution. See Ala. Const. Art. I, § 14. (1901). Finally, this is not a suit for prospective injunctive relief against a state official. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102, (1983).

Weiss contends in his brief that any immunity applicable to § 1983 suits does not apply to his case because he intentionally avoided invocation of 42 U.S.C. § 1983 in his Complaint. The mechanism by which a litigant asserts a violation of the federal constitution is § 1983, however. Section 1983 itself creates no substantive rights; rather, it provides a remedy for deprivation of federal rights established in the federal constitution or statutes. See Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989). In every count of the Complaint, Weiss refers to

3

violations of constitutional rights, all of which are claims which must be asserted pursuant to §
1983.

Weiss also has argued that the State of Alabama is not immune under the plain language
of the Eleventh Amendment. Under the case law which has developed, however, the Eleventh
Amendment not only bars suits against a state by citizens of another state, but also applies
equally to suits against a state initiated by that state's own citizens. See Edelman v. Jordan, 415
U.S. 651, 663 (1974); Summit Medical Associates, P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir.
1999). Accordingly, the State of Alabama is immune to all of the constitutional claims asserted
and those claims are due to be dismissed for lack of jurisdiction.

Weiss' remaining argument is that the State of Alabama is not immune under the
Eleventh Amendment because the immunity has been validly waived under civil rights statutes.
Weiss relies on 42 U.S.C. § 2000d-7 which provides that Eleventh Amendment immunity is
waived for violation of section 504 of the Rehabilitation Act of 1973, Title IX of the Education
Amendments of 1972, the Age Discrimination Act of 1975, Title VI of the Civil Rights Act of
1964, and any other federal statute prohibiting discrimination by recipients of federal financial
assistance. Weiss appears to argue that because the State of Alabama receives federal funds,
which are expended in the State's judicial system, the State's Eleventh Amendment immunity
has been abrogated. By enacting § 2000d-7, however, "Congress intended to abrogate Eleventh
Amendment immunity only for statutes that deal solely with discrimination by recipients of
federal financial assistance." Cronen v. Texas Dept. of Human Services, 977 F.2d 934, 937 (5th
Cir. 1992).

Weiss has not alleged that there are any statutes which prohibit discrimination against non-custodial parents. Weiss has pointed to Title VI, but that statute provides as follows: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.A. § 2000d.

Weiss also has listed numerous statutes in paragraph 40 of the Complaint as being statutes which relate to family law. Weiss has not alleged a basis for concluding that any of those statutes have been violated by the State of Alabama relative to Weiss, however. In fact, some of the statutes cited, such as 42 U.S.C.A. §§ 5771, 5701, are statements of Congressional findings, for which there could be no violation. Although Weiss has argued that the listed statutes reveal that the State of Alabama receives federal funding, the mere fact that funding is received pursuant to one statute does not mean that immunity is abrogated for all statutes. Therefore, although Weiss has invoked some federal statutes, he has failed to allege that the State of Alabama has violated those statutes, and he has failed to establish that Eleventh Amendment immunity is abrogated with respect to his claims for constitutional violations, which are necessarily brought pursuant to § 1983.

## IV. CONCLUSION

For reasons discussed, the Motion to Dismiss for lack of jurisdiction is due to be GRANTED. A separate Order will be entered in accordance with this Memorandum Opinion. Done this 15th day of November, 2004.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

*Ankenbrandt v. Richards*.[31]  This exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees."[32]  The Supreme Court has also "acknowledged that it might be appropriate for the federal courts to decline to hear a case involving 'elements of the domestic relationship,' even when divorce, alimony, or child custody is not strictly at issue."[33]  Plaintiff essentially claims that the State of Kansas's determination that he is a non-custodial parent was erroneous. According to the domestic relations exception, this Court cannot decide such a matter.

### Standing

Assuming, *arguendo*, that this Court has jurisdiction, plaintiff's claims must also be dismissed because he lacks standing.  Article III, § 2 of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies."[34]  Plaintiff, based on his complaint, must establish that he has standing.[35]  More specifically, plaintiff must demonstrate that he meets each of the following requirements: (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[36]  It is axiomatic that to have standing, a plaintiff must actually assert a claim

---

[31]504 U.S. 689 (1992).

[32]*Id.* at 703.

[33]*Elk Grove Unified Sch. Dist. v. Newdow*, 124 S. Ct. 2301, 2309 (2004) (quoting *Ankenbrandt*, 504 U.S. at 705)).

[34]*Raines v. Byrd*, 521 U.S. 811, 818 (1997).

[35]*Id.* (citation omitted).

[36]*Friends of the Earth, Inc. v. Laidlaw Env. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *see also Schaffer v. Clinton*, 240 F.3d 878, 882 (10th Cir. 2001) (citations omitted).

9

against a defendant.[37]   Additionally, Fed. R. Civ. P. 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Because plaintiff appears *pro se*, the court is mindful that plaintiff's pleadings are to be construed liberally and held to a less stringent standard than pleadings drafted by lawyers.[38]   If a *pro se* plaintiff's complaint can reasonably be read "to state a valid claim on which the plaintiff could prevail, it [the court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[39]   However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."[40]   For that reason, the court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues,"[41] nor should it "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."[42]

Plaintiff's 42 page complaint contains little more than conclusory statements regarding any particular claim he may have.  He pleads almost no specific facts about himself.  The only facts the Court can glean from his complaint are that plaintiff has a natural child and has been adjudicated a

---

[37]*See* U.S. CONST. art. III § 2 (standing for the proposition that federal courts only have power to adjudicate actual cases and controversies); *see also Powell v. McCormack*, 395 U.S. 486, 512-13 (1969) (noting that a federal district court lacks jurisdiction over the subject matter "if it is not a 'case or controversy'" within the meaning of Article III of the Constitution) (citations omitted) .

[38]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 1972)).

[39]*Id.*

[40]*Id.*

[41]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[42]*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

10

"non-custodial parent" in a proceeding before the State of Kansas. The Complaint does not allege how

plaintiff has been specifically harmed by this adjudication. He has failed to plead the requirements of

Rule 8(a) and has failed to allege standing to sue in his Complaint.

     **IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Strike

(Doc. 21) is **DENIED**.

     **IT IS FURTHER ORDERED BY THE COURT** that Defendant's Motion to Dismiss

(Doc. 14) is **GRANTED**.

     **IT IS SO ORDERED**.

Dated this _31st_ day of March 2005.

                   _S/ Julie A. Robinson_
                   Julie A. Robinson
                   United States District Judge

# **EXHIBIT 6**

AO450 - Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

# FILED

JAN 2 6 2005

LARRY W. PROPES, CLERK
CHARLESTON, SC

Scott David Watson, individually and
on behalf of all persons similarly situated,

ENTERED
1/26/05

Plaintiff,

## JUDGMENT IN A CIVIL CASE

vs.

Case Number: 2:04-22257-23

State of South Carolina,

Defendants.

**Decision by Court.** This action came before the Court, the Honorable Patrick Michael Duffy presiding.   The issues have been duly heard and a decision has been duly rendered.

**IT IS ORDERED AND ADJUDGED** that the defendant, State of South Carolina's motion to dismiss the complaint is granted and all other motions are moot.   It is further ordered that Magistrate Judge Robert S. Carr's report and recommendation is adopted as the order of this Court and this matter is ended.

LARRY W. PROPES, Clerk

By _Catria C. Murray_
                    Deputy Clerk

January 26, 2005

EXHIBIT
6

**FILED**

JAN 2 6 2005

IN THE UNITED STATES DISTRICT COURT  LARRY W. PROPES, CLERK
FOR THE DISTRICT OF SOUTH CAROLINA        CHARLESTON, SC

Scott David Watson, individually and          ) C.A. #2:04-22257-23
on behalf of all persons similarly situated,  )
                                              )              1/26/05
              Plaintiff,                       )
                                              )
        vs.                                    )          **ORDER**
                                              )
State of South Carolina,                       )
                                              )
              Defendant.                       )
                                              )

The above-captioned case is before this court upon the magistrate judge's recommendation that defendant's motion to dismiss be granted.

This Court is charged with conducting a _de novo_ review of any portion of the magistrate judge's report to which a specific objection is registered, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). However, absent prompt objection by a dissatisfied party, it appears that Congress did not intend for the district court to review the factual and legal conclusions of the magistrate judge. Thomas v Arn, 474 U.S. 140 (1985). Additionally, any party who fails to file timely, written objections to the magistrate judge's report pursuant to 28 U.S.C. § 636(b)(1) waives the right to raise those objections at the appellate court level. United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). No objections have been filed to the magistrate judge's report.

A review of the record indicates that the magistrate judge's report accurately summarizes this case and the applicable law. For the reasons articulated by the magistrate

judge, it is hereby ordered that defendant's motion to dismiss the complaint is **GRANTED**

and all other motions are **MOOT**.

**ORDERED**, that the magistrate judge's report and recommendation is adopted as the

order of this Court, and

**AND IT IS SO ORDERED.**


Patrick Michael Duffy
U.S. District Judge

Charleston, South Carolina
January _15_, 2005

ENTERED

12.21.04

**FILED**

DEC 2 1 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

**LARRY W. PROPES, CLERK**
**CHARLESTON, SC**

Scott David Watson,                    )    C. A. No. 2:04-22257-23AJ
individually, and on behalf            )
of all persons similarly               )
situated,                              )
                                       )
                Plaintiff,             )
                                       )
        -versus-                       )    **REPORT AND RECOMMENDATION**
                                       )
State of South Carolina,               )
                                       )
                Defendant.             )

This putative class action brought by an individual
proceeding pro se against the State of South Carolina is before
the undersigned United States Magistrate Judge for a report and
recommendation on the defendant's motion to dismiss the action.
28 U.S.C. § 636(b).

On September 17, 2004, the plaintiff, Scott David Watson,
sued the State of South Carolina on behalf of himself and
allegedly on behalf of all other "fit" parents who have been
adjudicated non-custodial parents in South Carolina courts.  He
asserted that he brought the suit pursuant to a plethora of
federal statutes, including 42 U.S.C. § 1983, for South
Carolina's alleged violation of almost all of his constitutional
rights, provisions of the tax code, the Social Security Act and
other federal acts, as well as the Magna Carta.  He seeks one
million dollars ($1,000,000.00) for each putative class member
and all manner of equitable relief.

19

On October 15, 2004, the State of South Carolina filed a
motion to dismiss under Fed.R.Civ.P. 12(b)(1),(2),(5) and (6).
Watson was provided a copy of the defendants' motion on October
21, 2004, and was given an explanation of dismissal and summary
judgment procedure as well as pertinent extracts from Rules 12
and 56 of the Federal Rules of Civil Procedure similar to that
required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).
Watson responded on December 10, 2004, by filing a memoranda in
opposition to the motion.  Hence it appears consideration of the
motion is appropriate.

## EVALUATING PRO SE COMPLAINTS

This court is required to construe pro se complaints and
petitions liberally.  Such pro se complaints and petitions are
held to a less stringent standard than those drafted by
attorneys, Gordon v. Leeke, 574 F.2d 1147,1151 (4th Cir.), cert.
denied, Leeke v. Gordon, 439 U.S. 970 (1978), and a federal
district court is charged with liberally construing a complaint
or petition filed by a pro se litigant to allow the development
of a potentially meritorious case.  See, Hughes v. Rowe, 449 U.S.
5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972).  When a federal
court is evaluating a pro se complaint, the plaintiff's
allegations are assumed to be true.  Fine v. City of New York,
529 F.2d 70,74 (2d Cir. 1975).

## DISCUSSION

A review of the record and relevant case law reveals that the defendant's motion should be granted and this matter ended.

The defendant has offered numerous grounds for dismissing this complaint, but the threshold question of jurisdiction over the defendant State of South Carolina is dispositive of the case.

A Rule 12(b)(2) motion asks the court to dismiss the action for lack of jurisdiction over the defendant. Plaintiffs bear the burden of persuasion if jurisdiction is challenged, Williams v. United States of America, 50 F.3d 299, (4th Cir. 1995); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991), and the plaintiff here has not carried that burden.

The Eleventh Amendment to the Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. amend. XI. By its explicit terms, the language of the Eleventh Amendment applies only to suits against a state by citizens of another state, but the Supreme Court has extended the Amendment's applicability to suits by citizens against their own state. See, Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72-73 (2000); College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense

3

Bd., 527 U.S. 627, 669-670 (1999); <u>Seminole Tribe of Florida v.</u>
<u>Florida</u>, 517 U.S. 44, 54 (1996); <u>Hans v. Louisiana</u>, 134 U.S. 1,
15 (1890). The practical effect of the Eleventh Amendment in
modern Supreme Court jurisprudence is that "A nonconsenting State
may not be sued by private individuals in federal court." <u>Bd. of</u>
<u>Trs. of the Univ. of Alabama v. Garrett</u>, 531 U.S. 356, 363
(2001).

The State of South Carolina is entitled to the protection of
the Eleventh Amendment here unless there is any exception to its
application. There are three potential exceptions: (1) consent;
(2) Congressional waiver under section 5 of the Fourteenth
Amendment; or (3) the doctrine of <u>Ex Parte Young</u>, 209 U.S. 123,
28 S.Ct. 441 (1908), which permits suits against state officers
where a plaintiff seeks only prospective, injunctive relief.
None apply here.

First, the State of South Carolina has explicitly preserved
its immunity from suit in federal court. S.C.Code Ann. §15-78-
20(e) provides:

> (e) Nothing in this chapter is construed as a
> waiver of the state's or political subdivision's
> immunity from suit in federal court under the
> Eleventh Amendment to the Constitution of the
> United States nor is consent to be sued in any
> state court beyond the boundaries of the State of
> South Carolina.

Second, Congress has not waived immunity in civil rights
cases against a state. <u>Will v. Michigan State Police Dep't.</u>, 491

4

U.S. 58, 109 S.Ct. 2304 (1989).  Third, since no state official

is named as a defendant, and since the plaintiff seeks damages in

this action, <u>Ex Parte Young</u> does not apply.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is

recommended that the defendant's motion to dismiss for want of

jurisdiction be granted and all other motions be deemed moot.

Respectfully Submitted,

*Robert S Carr*

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

December 21, 2005

5

# **EXHIBIT 7**

**CASE CLOSED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION **DATE**



MICHAEL T. ROSS,

    Plaintiff,

v.

THE STATE OF MICHIGAN,

    Defendant.

_____/

Case No. 04-CV-73811-DT

HONORABLE DENISE PAGE HOOD

**FILED**

## ORDER DISMISSING CAUSE OF ACTION WITHOUT PREJUDICE

On December 1, 2004, Plaintiff Michael T. Ross orally moved to dismiss the instant cause of action without prejudice. Defendant State of Michigan stipulated to dismiss the action without prejudice and without costs, reserving its right to seek costs in any future action filed by Plaintiff.

Accordingly,

IT IS ORDERED that Plaintiff's oral motion to dismiss the instant action without prejudice is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss (No. 10, 10/20/04) is MOOT.

IT IS FURTHER ORDERED that Plaintiff's Motion for Consolidation and Transfer to Judicial Panel on Multi District Litigation (No. 2, 9/29/04) is MOOT.

IT IS FURTHER ORDERED that Plaintiff's Request for Three-Judge Panel (No. 3, 9/29/04) is MOOT.

IT IS FURTHER ORDERED that Plaintiff's Motion to Appoint Class Counsel and to Certify Class (No. 5, 9/29/04) is MOOT.

**EXHIBIT**

**7**

IT IS FURTHER ORDERED that this action is DISMISSED without prejudice and without

costs.


DENISE PAGE HOOD
United States District Judge

DATED:    **DEC 0 7 2004**

2

# **EXHIBIT 8**

FILED

JAN 19  4 59 PM '05

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S.J.

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Robert K. Holmes, | NO. C 04-03949 JW |
| Plaintiff(s), | **ORDER GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS;** |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| State of California, | |
| Defendant(s). | |

## I.  INTRODUCTION

Plaintiff Robert K. Holmes has filed this pro se suit against the State of California alleging, on behalf of a purported class, discrimination of non-custodial parents in domestic relations matters concerning child custody, child support and taxation.  Defendant State of California moves to dismiss the action pursuant to Rules 12(b)(1) and (b)(6), Fed.R.Civ.P., or in the alternative, to stay all proceedings pursuant to Rules 16 and 26 Fed.R.Civ.P.  In addition, the following pending matters are before the Court: (1) Plaintiff's Application to Proceed in Forma Pauperis; (2)  Plaintiff's Request for Appointment of Class Counsel and Request for Class Certification; (3)  Plaintiff's Motion for Consolidation and Transfer by the Judicial Panel on Multi District Litigation; (4) sixteen motions to intervene filed by individuals alleging to be real parties in interest to this cause of action; and (5) two requests for judicial notice in support of Defendant's Motion to Dismiss.

While Plaintiff has not filed any written opposition to Defendant's Motion to Dismiss, the Court has considered Plaintiff's Memorandum of Law Regarding State Immunity, filed October 4,



EXHIBIT

8

2004. Defendant's Motion to Dismiss was heard on January 10, 2005. Having considered all papers filed to date and the comments of the parties, the motion to dismiss is granted based upon principles of Eleventh Amendment immunity.

## II. STANDARDS

A. Rule 12(b)(1)

At issue in a Rule 12(b)(1) Fed.R.Civ.P. motion to dismiss is the trial court's jurisdiction to hear the case. Rule 12(b)(1) jurisdictional attacks can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction, while a factual attack disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), Fed.R.Civ.P., a complaint may be dismissed for failure to state a claim upon which relief can be granted. Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Deal Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III. DISCUSSION

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has held: "It is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)(citations omitted).

2

1    Despite the absence of consent by the State of California, Mr. Holmes attempts to proceed

2  with this action by suggesting that by receiving financial assistance under federal statutes, any

3  immunity that the state may have previously enjoyed is abrogated.  (Plaintiff's Memorandum of Law

4  Regarding State Immunity at 2.)  There is no federal statute, however, that broadly mandates that a

5  state receiving federal funds will no longer be immune under the Eleventh Amendment if it allegedly

6  discriminates against citizens in regards to race, color, ethnicity, sex, gender, religion, or age, or if it

7  fails to protect any and all due process, civil, and constitutional rights of a given citizen.  Nor has

8  Mr. Holmes alleged that there are any statutes that prohibit discrimination against non-custodial

9  parents.  Accordingly, Mr. Holmes' action against the State of California is barred by Eleventh

10  Amendment immunity.  Further, this being a case involving issues of child custody and child

11  support, the domestic relations exception to federal jurisdiction applies, and this Court lacks

12  jurisdiction to intervene in this area.  Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992).

13                               **III.  CONCLUSION**

14    It is ordered that the application to proceed in forma pauperis is granted.  However, the

15  allegations in Mr. Holmes' complaint are insufficient on their face to invoke federal jurisdiction.

16  Moreover, there is no cognizable legal theory upon which Mr. Holmes is entitled to relief in this

17  Court.  Accordingly, this lawsuit is DISMISSED with prejudice.  All pending motions are denied as

18  moot.

19  Dated: January/9, 2005

20  04cv03949.dis

                                         JAMES WARE
                                         United States District Judge

21

22

23

24

25

26

27

28                                         3

*United States District Court*
*For the Northern District of California*

FILED

JAN 19   4 56 PM '05

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

**United States District Court**
For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Robert K. Holmes,                              NO. C 04-03949 JW

        Plaintiff(s),                  **JUDGMENT**

   v.

State of California,

        Defendant(s).
_____/

    Based upon the Court's January 19, 2005 Order Granting Application to Proceed in Forma Pauperis; Order Granting Defendant's Motion to Dismiss, judgment is entered in favor of Defendant State of California and against Plaintiff Robert K. Holmes.

Dated: January 19, 2005

                           _____
                           JAMES WARE
                           United States District Judge

04cv03949.judg

1   **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2   Beverley R. Meyers
    Douglas M. Press
3   Deputy Attorney General
    455 Golden Gate Avenue, Suite 11000
4   San Francisco, CA 94102-7004

5   Robert K. Holmes
    14940 Hwy 9
6   Boulder Creek, CA 95006

7   James Alan Neuenburg
    5000 Lakeville Highway
8   Petaluma, Ca 94954

9   Brian Alan Godfrey
    1637 Catalina Court 32
10   Livermore, CA 94550

11   Robert Brill
    P. O. Box 304
12   Tres Pinos, Ca 95075

13   Steven Dale Light
    P. O. Box 256
14   Livermore, Ca 94551

15

16   **Dated:** 1/19/05

17

18                           **Richard W. Wieking, Clerk**

                          By: Ronald L. Davis
                          **Courtroom Deputy**

19

20

21

22

23

24

25

26

27

28

*(left margin, vertical text)* **United States District Court**   For the Northern District of California

# EXHIBIT 9

᠎ ᠎ ᠎ ᠎ I States Courts
᠎. ᠎᠎ern District of Texas
ENTERED

DEC 1 0 2004

Michael N. Milby, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARIANITO T. BITARA, Individually and | § | |
| on behalf of all persons simiarly situated | § | |
| | § | |
| versus | § | CIVIL ACTION NO. H-04-3620 |
| | § | |
| | § | |
| STATE OF TEXAS | § | |

### ORDER

Pending before the Court is Defendant State of Texas's Motion to Dismiss Plaintiff's Verified Complaint. **(Instrument No. 9)**.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such dismissals are to be viewed with disfavor and are rarely granted. *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). They will only be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Dismissal should not be granted unless the party would not be entitled to relief under any set of facts or any possible legal theory that could consistently be proven with the allegations in the complaint. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

In determining whether a dismissal is warranted pursuant to Rule 12(b)(6), the court accepts as true all allegations contained in the plaintiff's complaint. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In addition, the facts are viewed in a light most favorable to the plaintiff. *Id.* "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to

EXHIBIT
9

prevent a motion to dismiss." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th

Cir. 2001) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

Based on the arguments of the parties and the applicable law, IT IS HEREBY

ORDERED that Defendant's Motion to Dismiss (**Instrument No. 9**) is **GRANTED**. Plaintiff's

causes of action against Defendant State of Texas are DISMISSED.

Counsel shall serve a copy of this Order upon all parties.

Signed on this _____ day of December, 2004, at Houston, Texas.


**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**

United States **Courts**
Southern District **of Texas**
ENTERED

DEC 1 0 2004

Michael N. Milby, **Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARIANITO T. BITARA, Individually and §
on behalf of all persons simiarly situated §
§
versus §    CIVIL ACTION NO. H-04-3620
§
§
STATE OF TEXAS §

## FINAL JUDGMENT

For the reasons stated in the Court's Order, signed on the _____ day of December, 2004,

this action is **DISMISSED**.

**THIS IS A FINAL JUDGMENT**.

Counsel shall serve a copy of this Order upon all parties.

Signed on this _____ day of December, 2004, at Houston, Texas.

_____
**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**

===============================================================

## * * * * * UNITED STATES DISTRICT COURT * * * * *

_____NORTHERN_____    **DISTRICT OF** _____NEW YORK_____

JUDGMENT IN A CIVIL CASE

### DOCKET NO. 1:04-cv-1083 (GLS/DRH)

### KENNETH W.R. ROHLING

v.

### STATE OF NEW YORK

_____    **JURY VERDICT.** This action came before the Court for a trial by jury. The issues have
been tried and the jury has rendered its verdict.

_____X_____    **DECISION BY COURT.** This action came to trial or hearing before the Court. The issues
have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED,** that the complaint is dismissed as frivolous; that in light of the dismissal of this
action, plaintiff's motions for a three judge panel, for class certification and counsel, and for consolidation and
transfer to the Judicial Panel on Multi-District Litigation are denied as moot, in accordance with the Decision and
Order, signed by U.S. District Judge Gary L. Sharpe, on November 15, 2004.

_____November 15, 2004_____        _____LAWRENCE K. BAERMAN_____
                                              CLERK OF THE COURT

                        BY:    S/ _____
                                   DEPUTY CLERK
                                     John Law

# **EXHIBIT 5**

ans

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MICHAEL C. FELLOWS,                )
                                   )
            Plaintiff,             )
                                   )
vs.                                )
                                   )        Case No. 04-4131-JAR
THE STATE OF KANSAS,               )
                                   )
            Defendant.             )
_____     )

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff Michael C. Fellows, proceeding *pro se*, filed suit seeking redress from the State of

Kansas for violations of various statutes and laws pertaining to custody rights of parents in Kansas.

Defendant State of Kansas filed a Motion to Dismiss (Doc. 14). Defendant also filed a Motion to

Strike (Doc. 21) plaintiff's response to the motion to dismiss, as not timely filed in accordance with D.

Kan. Rule 6.1(d)(2).[1]  The Court grants the motion to dismiss because plaintiff has failed to show that

_____

[1]Plaintiff neither filed a motion for leave to file the response out of time, nor a response to the motion to strike. D. Kan. Rule 7.4 provides that when a party fails to respond within the time allowed in Rule 6.1(d), it has waived its right to file a response except upon a showing of excusable neglect; and, absent such a showing, the motion "will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." *See also Mandeville v. Quinstar Corp.*, No. 02-3267, 2004 WL 1571087, *4 (10th Cir. July 14, 2004). Plaintiff has made no showing of excusable neglect; instead, he argues that defendant failed to provide him "with any plain language notice of potential adverse consequences." Clearly, plaintiff was aware of his right to respond on some level because he did respond, just not within the time imposed by the rules. Despite plaintiff's abject failure to respond or obtain leave to respond out of time, the Court has considered plaintiff's response, and the Court concludes that there are multiple grounds to grant defendant's motion to dismiss.



EXHIBIT

5

he has standing, and because this suit is barred by the Eleventh Amendment, the Rooker-Feldman

doctrine and the domestic-relations exception.

## I. Background

Plaintiff filed his petition *pro se*, individually and on behalf of all persons similarly situated.

Plaintiff apparently obtained this form petition from an internet website.[2]  He alleges various and

numerous violations of federal law and the Constitution by the State of Kansas stemming from the fact

that he has a child for which the State of Kansas adjudicated him a non-custodial parent.  His claim is

made on behalf of all parents adjudicated non-custodial parents by the State of Kansas.  In his petition,

he charges the State of Kansas with, "[g]ross negligence and reckless disregard for duties owed in

custody proceedings," "[refusing] to enforce and support lawful parenting time," entering into a

"conspiracy with all others of the several States to enforce . . . unlawfully determined child custody

orders," "[d]efrauding in regards to child support," participating in "[w]illful, reckless, and/or negligent

government mismanagement," and engaging in "disparate taxation."  He seeks injunctive relief,

declaratory relief, and money damages.[3]

## II. Motion to Dismiss Standards

### *Fed. R. Civ. P. 12(b)(1): Subject Matter Jurisdiction*

There are two statutory bases for federal subject matter jurisdiction. First, under 28 U.S.C. §

1332, federal district courts have original jurisdiction of civil actions where complete diversity of

citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exist.

---

[2]*See* http://www.indianacrc.org/classaction.html (last updated Feb. 11, 2005).

[3]*See Donohue v. Rhode Island*, No. 04-427 (D.R.I. Jan. 14, 2005) (explaining the claims in a similar petition
filed in Rhode Island).

2

Second, under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," or federal question jurisdiction. In addition, if the Court has federal question or diversity jurisdiction of some claims, it may exercise supplemental jurisdiction over state law claims.[4]

The Tenth Circuit has commented on the limited jurisdiction of the federal courts and summarized the duties of the district court in considering whether it has jurisdiction to consider a case:

> The Federal Rules of Civil Procedures [sic] direct that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.". . . Moreover, "[a] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." . . . Nor may lack of jurisdiction be waived or jurisdiction be conferred by "consent, inaction or stipulation." Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.[5]

Plaintiff is responsible for showing the court by a preponderance of the evidence that jurisdiction is proper.[6] Mere allegation of jurisdiction is not enough.[7]

### *Fed. R. Civ. P. 12(b)(6): Failure to State a Claim upon which Relief may be Granted*

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint and should not be granted "unless it appears beyond doubt that the plaintiff

---

[4]28 U.S.C. § 1367.

[5]*Penteco Corp. v. Union Gas Sys.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citations and quotations omitted).

[6]*United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002).

[7]*Id.* at 798.

can prove no set of facts in support of his claim which would entitle him to relief."[8]  When deciding a

motion to dismiss, the Court "must accept as true the plaintiff's well-pleaded factual allegations and all

reasonable inferences must be indulged in favor of the plaintiff."[9]  Furthermore, the Court must construe

*pro se* pleadings liberally and apply a less stringent standard than what is applicable to attorneys.[10]

However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint

or construct a legal theory on a plaintiff's behalf."[11]  The Court need only accept as true plaintiff's

"well-pleaded factual contentions, not his conclusory allegations."[12]

## III. Discussion

Defendant argues that this complaint should be dismissed because the suit is barred by the

Eleventh Amendment, the Rooker-Feldman doctrine and the domestic relations exception.  Defendant

further argues that plaintiff lacks standing.[13]  The Court will consider each of these arguments in turn.

---

[8]*Callery v. U.S. Life Ins. Co.*, 392 F.3d 401, 404 (10th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Martinez v. Roth*, 53 F.3d 342, 342 (10th Cir. 1995), *cert. denied*, 516 U.S. 1012 (1995).

[9]*Martinez*, 53 F.3d at 342 (quoting *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987)).

[10]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[11]*Id.*

[12]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13]Defendant supplied the Court with authority from other courts that have addressed similar complaints. *See* Def. Notice of Supplemental Authority (Doc. 23) (citing *Weiss v. Alabama*, No. 04-876 (M.D. Ala. Nov. 15, 2004) (dismissing suit on Eleventh Amendment grounds); *Ramey v. Alaska*, No. 04-0215 (D. Alaska Nov. 2, 2004) (denying appointment of counsel, noting that suit is barred by the Eleventh Amendment, giving defendant an opportunity to file an amended complaint); *Collins v. Kentucky*, No. 04-66 (E.D. Ky. Oct. 22, 2004) (dismissing suit for lack of standing); *Morehouse v. Nebraska*, No. 04-484 (D. Neb. Oct. 12, 2004) (denying class certification, denying appointment of counsel, ordering Plaintiff to file amended complaint); *Morehouse v. Nebraska*, No. 04-484 (D. Neb. Nov. 1, 2004); *Ubank v. New Jersey*, No. 04-4557 (D.N.J. Oct. 25, 2004) (order to show cause why case should not be dismissed due to the domestic-relations exception, the Rooker-Feldman doctrine, and Younger abstention); *Rohling v. New York*, No. 04-1083 (N.D.N.Y. Nov. 15, 2004) (dismissing Complaint as "frivolous" on grounds of Eleventh Amendment immunity and Rooker-Feldman)); Def. Second Notice of Supplemental Authority (Doc. 25) (citing *Bitara v. Texas*, No. 04-3620 (S.D. Tex. Dec. 10, 2004); *Pettit v. New Mexico*, No. 04-1063 (D.N.M. 2004) (dismissing due to 11th Amendment Immunity, lack of case or controversy, and the Rooker-Feldman doctrine)); and Def. Third Notice of

4

*Eleventh Amendment Immunity*

The State of Kansas is entitled to absolute immunity under the Eleventh Amendment. The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[14] The Supreme Court has repeatedly explained that the amendment confirms the historically-rooted understanding of sovereign immunity, which is that federal jurisdiction over suits against unconsenting states–even by its own citizens–"was not contemplated by the Constitution."[15]

It is settled law that under the Eleventh Amendment, states are immune from suit unless (1) the state consents to suit, or (2) Congress validly abrogates the states' immunity.[16] The State of Kansas does not consent to suit under this statute, and Congress may not abrogate state immunity for 42 U.S.C. § 1983 claims under its Fourteenth Amendment authority.[17] Moreover, a state is not a "person" for purposes of § 1983.[18] As a result, the Eleventh Amendment bars suits under § 1983

Supplemental Authority (Doc. 26) (citing *Donohue v. Rhode Island*, No. 04-427 (D.R.I Jan. 14, 2005) (order dismissing case for failure to comply with Fed. R. Civ. P. 8); *Howse v. Indiana*, No. 04-1530 (S.D. Ind. Jan. 28, 2005) (order dismissing case on 11th Amendment Immunity, the Rooker-Feldman doctrine, and the domestic relations exception); *Ammann v. Connecticut*, No. 04-1647 (D. Conn. Feb. 10, 2005) (provisionally dismissing on 11th Amendment Immunity grounds)).

[14]U.S. CONST. amend. XI.

[15]*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).

[16]*Id.* at 54-55; *Nelson v. Geringer*, 295 F.3d 1082, 1096 (10th Cir. 2002).

[17]*Will v. Mich. Dept. of State Police*, 491 U.S. 58, 63 (1989); *Nelson*, 295 F.3d at 1096 (citing *Quern v. Jordan*, 440 U.S. 332 (1979)).

[18]*Will*, 491 U.S. at 64-67; *accord Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001); *McLaughlin v. Bd. of Trustees of State Coll. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000); *see also Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995) (explaining that a state or state agency is not a person under § 1983

5

against the State of Kansas.

Section 1983 itself creates no substantive rights; it "merely affords relief to a plaintiff who has been deprived of a constitutional or federal statutory right by a person acting under color of state law."[19]  Although plaintiff did not mention 42 U.S.C. § 1983 in his Complaint, in every count of the Complaint he refers to violations of constitutional rights, all of which are claims which must be asserted pursuant to § 1983.  Congress also has not abrogated the state's immunity under any of the other civil rights statutes plaintiff cites in his Complaint, and the state had not waived its immunity under the statutes.[20]  These statutes create causes of action against individuals only and do not contain a waiver of sovereign immunity.[21]

Other statutes cited by plaintiff likewise do not waive sovereign immunity.  Sections 241 and 242 of Title 18 of the United States Code make it illegal for two or more persons to engage in a conspiracy to deprive an individual of his/her constitution rights.  These statutes do not create a private right of action,[22] and by their nature, do not waive a state's Eleventh Amendment immunity.  Sections 1443 and 1657 of Title 28 of the United States Code are procedural statutory provisions and, by their own terms, do not abrogate a state's Eleventh Amendment immunity.[23]

---

except to the extent that the plaintiff sues for prospective injunctive relief only).

[19]*Bolden v. City of Topeka,* 318 F. Supp. 2d 1076, 1082 (D. Kan. 2004) (citing *Gallegos v. City & County of Denver*, 984 F.2d 358, 362 (10th Cir.1993); *see also Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).

[20]*See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998).

[21]*Id.*

[22]*Newcomb v. Ingle*, 827 F.2d 675, 676 n.1 (10th Cir.1987).

[23]*See* 28 U.S.C. §1657 (requiring that claims for injunctive relief be expedited); *Wolpoff v. Cuomo*, 792 F. Supp. 964, 967 (S.D.N.Y. 1992) (Section 1443's refusal clause does not clearly abrogate the state's Eleventh Amendment immunity); *Carreras Roena v. Camara De Comerciantes Mayoristas, Inc.*, 440 F. Supp. 217, 219

Plaintiff alleges that 42 U.S.C. § 2000d-7 abrogates the state's sovereign immunity in this case because Kansas receives federal funds, which are expended in the state's judicial system. Under 42 U.S.C. § 2000d-7, Eleventh Amendment immunity is waived for violations of § 504 of the Rehabilitation Act of 1975, Title VI of the Civil Rights Act of 1964, and any other federal statute prohibiting discrimination by recipients of federal financial assistance. Yet plaintiff does not appear to be suing under any of the statutes listed in § 2000(d)-7(a)(1). The mere fact that funding is received pursuant to one statute does not mean that immunity is abrogated for all statutes. Plaintiff has not alleged a violation of any particular federal statute with specificity. He is not entitled to a trial about his federal violations unless he establishes that the Court has jurisdiction over the case. He has not met this burden and his case will be dismissed pursuant to rule 12(b)(1).

### Rooker-Feldman Doctrine

To the extent plaintiff is challenging a ruling of the Kansas Courts, this Court cannot review any such ruling, pursuant to the *Rooker-Feldman* doctrine.[24] Federal trial courts do not have the power to hear what are essentially appeals from a state court decision. The *Rooker-Feldman* doctrine bars "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States [trial] court."[25]

Although plaintiff argues he is not challenging a specific state court decision, he does claim that the state's determination that he is a non-custodial parent is unconstitutional. Generally, a federal

(D.C.P.R. 1976), *aff'd* 559 F.2d 1201 (1st Cir. 1977) ("Section 1443 is not a substantive source of jurisdiction over the states . . . in view of the absolute prohibition of the Eleventh Amendment of the Constitution").

[24]*See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923).

[25]*Johnson v. De Grandy,* 512 U.S. 997, 1005-06 (1994).

7

district court cannot review matters actually decided by a state court, nor can it issue "any declaratory relief that is inextricably intertwined with the state court judgment."[26]  "A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."[27]  In addition to the statutory appellate-original jurisdiction dichotomy underlying the doctrine, courts have found other policies served by the *Rooker-Feldman* doctrine.[28]  It maintains respect for state courts, provides a measure of finality, and prevents multiple bites at the apple.[29]

Under the Rooker-Feldman doctrine, federal district courts:

> [H]ave subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in [the United States Supreme Court.][30]

Thus, if plaintiff sought federal review of his state court decision, he should have appealed the original determination to the Kansas Supreme Court, and then to the United States Supreme Court.

### Domestic Relations Exception

Plaintiff's claim is further barred by the "domestic relations exception" first recognized in

---

[26]*Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998) (quotations and citations omitted).

[27]*Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (citation omitted).

[28]*Johnson v. Kansas*, 888 F. Supp. 1073, 1079 (D. Kan. 1995), *aff'd,* 81 F.3d 172 (10th Cir. 1996).

[29]*Id.* at 1079-80.

[30]*Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1108 (10th Cir. 2000) (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)).

# **EXHIBIT 10**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MICHAEL JUDE PETTIT, individually, and
on behalf of all persons similarly situated,

      Plaintiff,

vs.

                                    No. CIV 04-1063 JB/RHS

STATE OF NEW MEXICO,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Complaint, filed November 1, 2004 (Doc. 10). The Court held a hearing on this motion on December 7, 2004.[1] The primary issues are whether the Eleventh Amendment precludes Plaintiff Michael Jude Pettit's case directly against the Defendant State of New Mexico and whether Pettit has standing to bring this federal lawsuit. Because Pettit has not shown that the State has consented to his suit in federal court or that Congress has abrogated the State's immunity for his claims, and because Pettit failed to allege facts indicating he has been injured in fact, the Court will grant the State's motion and dismiss Pettit's Complaint.

### FACTUAL AND PROCEDURAL BACKGROUND

Pettit alleges that he is a non-custodial parent. <u>See</u> Complaint ¶ 15, at 5, filed September 20, 2004 (Doc. 1). Pettit, acting *pro se*, attempts to bring his action against the State on behalf of all other parents who have had a judge of a New Mexico court adjudicate them as the non-custodial

---

[1] Pettit did not appear at the hearing, either in person or telephonically. The State represented that there was an outstanding warrant for Pettit on an automobile theft charge. <u>See</u> Transcript of Hearing at 2:12-23 (December 4, 2004).



parent of their child or of their children. Pettit's Complaint inserts his name as the Plaintiff and the State of New Mexico as Defendant into a form complaint posted on a website of the "Indiana Civil Rights Council," which has been promoting and recruiting plaintiffs to bring this identical *pro se* lawsuit in federal court in each of the fifty states. See Indiana Civil Rights Council, Class-Actions!, http://www.indianacrc.org?classaction.html (visited Dec. 17, 2004); Torm L. Howse, President, Indiana Civil Rights Council, Examples, http://www.ffvisual.com/ncpshared/examples.html (visited Dec. 17, 2004). Although the Complaint does not allege the class' size or the estimated amount of damages sought, the website estimates the purported class in New Mexico to consist of some 70,294 persons and estimates the damages sought at $210,882 billion.   See Class-Action!, http://www.indianacrc.org/classaction.html (visited December 17, 2004).[2]

In the Complaint, Pettit alleges that the State of New Mexico has violated several amendments of the United States Constitution and various federal statutory provisions within the context of child custody and support proceedings. See Complaint ¶ 39, at 11-15. Pettit's contentions allegedly stem from a parent's fundamental right to make decisions concerning their children's care, custody, and control. See id. ¶ 44-48, at 17. Pettit asks the Court to certify him and other non-custodial parents as a class this litigation's purposes and that a three-judge panel be appointed. See Motion to Certify Class Action and Appointment of Counsel, filed September 20, 2004 (Doc. 4); Motion for Order for a Three Judge Panel, filed September 20, 2004 (Doc. 5). Pettit has also moved for consolidation and

---

[2] When the Court visited the website on December 17, 2004, the "Class Coordinator" was listed as Robert Wood. Under the "CASE INFO" section, however, it lists "Pettit, et al., v. New Mexico, #CIV-04-1063JB-RHF, Judge Browning" as the pending case. The Court also notes that, although Pettit's complaint does not list the amount of damages sought, in Pettit's Request for Default Judgment, filed on November 1, 2004, he lists the amount claimed as "$210.882 BILLION plus costs." Doc. 10.

transfer of this cause by the Judicial Panel on Multi-District Litigation. See Notice of Motion for Consolidation and Transfer by the Judicial Panel on Multi District Litigation, filed September 20, 2004 (Doc. 3).[3]

Perhaps because Pettit has inserted his name into a form complaint originally prepared elsewhere, he does not provide details on his pending state-court divorce and child custody proceedings. Because they form the basis and background for Pettit's grievances, and because they may be relevant to the question of the Court's jurisdiction, the State asks the Court to take judicial notice of the decrees[4] in the following proceedings to which Pettit was or is a party:

1. Celeste Pettit v. Michael Pettit, D-1113-DV-200200395 (Gallup District Court). The complaint alleges domestic violence, several violations, and seeks a TRO. The case was consolidated with DM 2003-7-V.

2. Celeste Pettit v. Michael Pettit, D-1113-DM-2003-0007 (Gallup District Court). The complaint seeks divorce with custody. The case was transferred to Curry County on 2/27/04.

---

[3] Although Pettit has already moved for transfer to the Judicial Panel on Multi-District Litigation, this Court may still resolve the State of New Mexico's Motion to Dismiss. See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1337-38 (9th Cir. 2001)(discussing the district court's order to dismiss for lack of standing while a motion to consolidate was pending before the Judicial Panel on Multi-District Litigation).

[4] The State's exhibits do not establish fully the detail's listed in the text about Pettit's cases. See Defendant's Motion to Dismiss at 2-3; Pettit v. Pettit, Petition for Divorce, No. DM 2003-7-V (Jan. 10, 2003); Pettit v. Pettit, Order Petition to Transfer Dissolution of Marriage Proceedings from the District Court of McKinley County to the District Court of Curry County, No. D-0905-DM-2004-00175 (March 22, 2004); Pettit v. Pettit, Order on Motion for Change of Venue, No. DM-2003-7-V (Feb. 27, 2004); Pettit v. Pettit, Order Accepting Transfer of McKinley County Petition for Dissolution of Marriage to Curry County, No. D-0905-DM-2004-00175 (Mar. 25, 2004); Pettit v. Pettit, No. D-0905-DM-200400175, Notice of Hearing on the Merits (July 29, 2004)(setting hearing date for December 1, 2004). The Court, therefore, will take judicial notice of these state proceedings, but not all of the representations that the State makes about them.

3. <u>Celeste Pettit v. Michael Pettit and Linda Latimer</u>, D-905-DV-200300025 (Clovis District Court). This is domestic violence petition. The state court dismissed the case with prejudice on 2/10/03.

4. <u>Michael Pettit v. Celeste Pettit</u>, D-911-DV-200300120 (Portales District Court). This is domestic violence petition. The state court dismissed the petition on 12/11/03.

5. <u>Celeste Pettit v. Michael Pettit</u>, D-905-DV-200300431 (Clovis District Court). Celeste Pettit filed a domestic violence petition; the state court entered a "no contact" TRO. The order expired 6/11/04.

6. <u>Celeste Pettit v. Michael Pettit</u>, M-35-CV-200300240 (Gallup Magistrate Court). A civil judgment was entered in favor of Celeste on 3/17/03. The civil judgment was not satisfied.

7. <u>Michael Pettit v. Celeste Pettit</u>, D-911-DM-200400047 (Portales District Court). The complaint sought a divorce with custody. The court held a show cause hearing on 4/7/04. Although the case is still open, nothing has occurred in this case since that hearing.

8. <u>Celeste Pettit v. Michael Pettit</u>, D-905-DM-200400175 (Clovis District Court). The complaint sought divorce with custody. The state court set an emergency motion to suspend visitation and contact for a hearing on December 1, 2004.

The State moves pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and D.N.M. LR-Civ. 7. The State called the telephone number for Pettit listed on the United States District Court's website, but Pettit did not return the call to state his position. Pettit has not filed a response, but on October 6, 2004, Pettit filed a "Memorandum of Law Regarding State Immunity" (Doc. 9). Given the nature of the motion, and Pettit's Memorandum of Law Regarding State Immunity, the Court assumes that Pettit opposes the motion.

-4-

## LAW REGARDING RULE 12(b)(1)

The plaintiff has the burden of establishing jurisdiction, including demonstrating that he meets the constitutional requirements for standing. See Nova Health Systems v. Gandy, 388 F.3d 744, 749 (10th Cir. 2004)("As an irreducible constitutional minimum, a plaintiff must satisfy three criteria in order for there to be a 'case or controversy' that may be resolved by the federal courts. . . . As the party seeking to invoke federal jurisdiction, the plaintiff . . . has the burden of establishing each of [the constitutional elements] of Article III standing.")(citing Lujan v. Defenders of Wildlife, 504 U.S. at 660-61).

With respect to motions to dismiss for lack of subject matter jurisdiction under rule 12(b)(1), the United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002), cert. denied, 538 U.S. 999 (2003). These two forms of attacks differ. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion -- the court must consider the complaint's allegations to be true. See Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.), cert. denied, 454 U.S. 897 (1981). But when the attack is factual,

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d at 412-13 (quoting Mortenson v. First Fed. Savings and Loan Ass'n.,

549 F.2d 884, 891 (3d Cir. 1977)).  Accordingly, "[i]n assessing the propriety of a motion for

dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed

facts; it may hear conflicting evidence and decide for itself the factual issues that determine

jurisdiction." Colonial Pipeline Co. v. Collins, 921 F.2d 1237, 1243 (11th Cir. 1991)(citing Gould,

Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir.1988) and Williamson v. Tucker, 645

F.2d 404, 413 (5th Cir. 1981), cert. denied, 454 U.S. 897 (1981)).

## LAW REGARDING RULE 12(b)(6)

In a ruling on a motion to dismiss under rule 12(b)(6), the court must accept the complaint's

factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  See Jenkins v.

McKeithen, 395 U.S. 411, 421 (1969); Housing Auth. of the Kaw Tribe v. City of Ponca City, 952

F.2d 1183, 1187 (10th Cir. 1991).  The question is not whether the plaintiff will ultimately prevail,

but whether the allegations entitle the plaintiff to offer evidence to support his claim.  See Scheuer

v. Rhodes, 416 U.S. 232, 236 (1974).  These deferential rules, however, do not allow the court to

assume that a plaintiff "can prove facts that he has not alleged or that the defendants have violated

the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal.

State Council of Carpenters, 459 U.S. 519, 526 (1983).  Ultimately, the court cannot dismiss the

complaint unless it appears beyond doubt that the plaintiff can prove no set of facts which would

entitle him or her to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## LAW REGARDING THE ELEVENTH AMENDMENT

The Eleventh Amendment to the United States Constitution provides: "The Judicial power

of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects

of any Foreign State." U.S. Const. amend. XI. The Supreme Court of the United States has long

"'understood the Eleventh Amendment to stand not so much for what it says, but for the

presupposition . . . which it confirms.'" Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73

(2000)(quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996), in turn quoting Blatchford

v. Native Village of Noatak, 501 U.S. 775, 779 (1991)). According to the Supreme Court:

> That presupposition, first observed over a century ago in Hans v. Louisiana, 134 U.S.
> 1 . . . (1890), has two parts: first, that each State is a sovereign entity in our federal
> system; and second, that "'[i]t is inherent in the nature of sovereignty not to be
> amenable to the suit of an individual without its consent,'" id., at 13 . . . (emphasis
> deleted), quoting The Federalist No. 81, p. 487 (C. Rossiter ed. 1961)(A. Hamilton).
> See also Puerto Rico Aqueduct [&] Sewer Authority [v. Metcalf & Eddy, Inc.], 506
> U.S. 139,] 146 [(1993)]("The Amendment is rooted in a recognition that the States,
> although a union, maintain certain attributes of sovereignty, including sovereign
> immunity"). For over a century we have reaffirmed that federal jurisdiction over suits
> against unconsenting States "was not contemplated by the Constitution when
> establishing the judicial power of the United States." Hans [v. Louisiana, 134 U.S.]
> at 15.

Seminole Tribe of Fla. v. Florida, 517 U.S. at 54; id. at 54 n.7 (collecting cases)(footnote omitted).

The Supreme Court reaffirmed in Kimel v. Fla. Bd. of Regents "that the Constitution does

not provide for federal jurisdiction over suits against nonconsenting States." 528 U.S. at 73. Thus,

"an unconsenting State is immune from suits brought in federal courts by her own citizens as well as

by citizens of another State." Employees of the Dep't of Pub. Health & Welfare v. Dep't of Pub.

Health & Welfare, 411 U.S. 279, 280 (1973).

The Supreme Court has held: "It is clear . . . that in the absence of consent a suit in which the

State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh

Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)(citations

omitted). The Eleventh Amendment thus does not only bar suits for money damages. It bars suits

-7-

for any relief.

42 U.S.C. § 2000d-7 provides:

A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7(a)(1).

## LAW ON STANDING

"Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies." United States v. Colo. Supreme Court, 87 F.3d 1161, 1164 (10th Cir. 1996)(citing U.S. Const. art. III, § 2, cl. 1 and Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982)). "The case or controversy limitation requires that a plaintiff have standing." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61(1992)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Id. (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. at 498.

## 1.    Constitutional Requirement: Injury In Fact.

Under the constitutional requirements, "[a] plaintiff has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision." United States v. Colo. Supreme Court, 87 F.3d at 1164 (citing Lujan v. Defenders of Wildlife, 504 U.S. at 559-61).

-8-

The United States Court of Appeals for the Tenth Circuit has explained "injury in fact" as follows:

> An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. [Lujan v. Defenders of Wildlife, 504 U.S. at 559-61.] These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." Id. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" Id. at 561 . . . (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 . . . (1990))."

United States v. Colo. Supreme Court, 87 F.3d at 1164-65 (10th Cir. 1996).

The Tenth Circuit has noted that the Supreme Court has "required a heavy burden of pleading in order to meet the standing requirements, i.e., that the complainant must clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Citizens Concerned for Separation of Church and State v. City and County of Denver, 628 F.2d 1289, 1295-96 (10th Cir. 1980). As the Supreme Court of the United States has noted:

> The party invoking federal jurisdiction bears the burden of establishing these elements. . . . Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'

See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)(quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990))(internal citations omitted). "The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in

the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" <u>Citizens Concerned for Separation of Church and State v. City and County of Denver</u>, 628 F.2d 1289, 1295-96 (10th Cir. 1980) (quoting <u>Baker v. Carr</u>, 369 U.S. 186, 204 (1962)).

## 2.    **Prudential Limitation: Domestic Relations Exception.**

The prudential limitations on standing, on the other hand, "encompass[] 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, __ U.S. __, 124 S.Ct. 2301, 2309 (2004)(quoting <u>Allen v. Wright</u>, 468 U.S. 737, 751(1984). One of these prudential limitations, the "domestic relations exception," arises out of the belief that "in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts." <u>Id.</u> As the Supreme Court of the United States explained:

> One of the principal areas in which this Court has customarily declined to intervene is the realm of domestic relations. Long ago we observed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." <u>In re Burrus</u>, 136 U.S. 586, 593-594 . . . (1890). <u>See also</u> <u>Mansell v. Mansell</u>, 490 U.S. 581, 587 . . . (1989) ("[D]omestic relations are preeminently matters of state law"); <u>Moore v. Sims</u>, 442 U.S. 415, 435 . . . (1979) ("Family relations are a traditional area of state concern"). So strong is our deference to state law in this area that we have recognized a "domestic relations exception" that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 703 . . . (1992). . . . [W]hile rare instances arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue, <u>see, e.g.</u>, <u>Palmore v. Sidoti</u>, 466 U.S. 429, 432-434 . . . (1984), in general

-10-

it is appropriate for the federal courts to leave delicate issues of domestic relations to
the state courts.

Elk Grove Unified Sch. Dist. v. Newdow, 124 S.Ct. at 2309.

In regard to standing of a class representative in a class action lawsuit, the court must

determine whether the proposed class representative has suffered adequate injury as well, thereby

meeting the requisite standing requirements:

> An appropriate application of standing in class suits necessitates an inquiry into
> whether the class members have been injured by defendant's conduct, thereby
> presenting a 'live' case, as well as whether the representative party himself has been
> injured so that he has a sufficiently direct interest to assure adequacy of
> representation. As long as the representative parties have a direct and substantial
> interest, they have standing; the question whether they may be allowed to present
> claims on behalf of others who have similar, but not identical, interests depends not
> on standing, but on an assessment of typicality and adequacy of representation.

> In sum, then, to avoid a dismissal based on a lack of standing, the court must be able
> to find that both the class and the representatives have suffered some injury requiring
> court intervention. But this requisite of an injury is not applied too restrictively.

C. Wright & A. Miller, M. Kane, 7B Fed. Prac. & Proc. Civ.2d § 1785.1 (2004). The requirement

that a class representative have standing independent of the group relates to another prudential

limitation on federal court jurisdiction: ""[T]he plaintiff . . . cannot rest his claim to relief on the legal

rights or interests of third parties." Warth v. Seldin, 422 U.S. at 499.

**3.    Rooker-Feldman Doctrine.**

"Under 28 U.S.C. § 1257, 'federal review of state court judgments can be obtained only in

the United States Supreme Court.'" Kenmen Eng'g v. City of Union, 314 F.3d 468, 473 (10th Cir.

2002). Federal courts "do not have jurisdiction . . . over challenges to state court decisions in

particular cases arising out of judicial proceedings even if those challenges allege that the state court's

action was unconstitutional." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486

-11-

(1983). This doctrine, know as <u>Rooker-Feldman</u>, "prohibits a lower federal court from considering claims actually decided by a state court, . . . and claims 'inextricably intertwined' with a prior state-court judgment. . . ." <u>Kenmen Eng'g v. City of Union</u>, 314 F.3d at 473 (citing <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. at 483 n.16 and <u>Rooker v. Fid. Trust Co.</u>, 263 U.S. 413, 415-16 (1923)). As the Tenth Circuit explained:

> <u>Rooker-Feldman</u> precludes "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." <u>Johnson v. De Grandy</u>, 512 U.S. 997, 1005-06 (1994).

<u>Kenmen Eng'g v. City of Union</u>, 314 F.3d at 473. The Tenth Circuit has interpreted the <u>Rooker-Feldman</u> doctrine to encompass state decisions from the intermediate, as opposed to the highest, state court, <u>see id.</u>, as well as state decisions that are not "final," <u>id.</u> at 474. "Under <em>Rooker-Feldman</em>, 'lower federal courts possess no power whatever to sit in direct review of state court decisions.' . . . This prohibition extends to all state-court decisions--final or otherwise." <u>Id.</u> at 474-75.

## ANALYSIS

The Court has spent considerable time reviewing Pettit's 150-paragraph, 42-page Complaint, and it is very difficult to understand. The Eleventh Amendment bars most, if not all, of his Complaint. Other jurisdictional doctrines bar whatsoever may survive Eleventh Amendment hurdles.[5]

## I.      THE ELEVENTH AMENDMENT BARS FEDERAL JURISDICTION OVER PETTIT'S CLAIMS.

---

[5] The State supplied the Court will authority from other courts that have addressed this form complaint. <u>See</u> Defendant's Notice of Supplemental Authority, filed December 7, 2004 (Doc. 22). Each of these courts reached a similar conclusion. <u>See</u> <u>Collins v. Commonwealth of Kentucky</u>, No. 04-CV-66-JMH, at 1 (E.D. Ky. Nov. 19, 2004); <u>Rohling v. State of New York</u>, No. 1:04-CV-1083 (GLS)(DRH), at 6 (N.D.N.Y. Nov. 15, 2004); <u>Weiss v. State of Alabama</u>, No. 2:04cv876-A, at 5 (M.D. Ala. Nov. 15, 2004); <u>Urbank v. State of New Jersey</u>, No. 04-4557, at 4 (D.N.J. Oct. 25, 2004).

Although the present case involves a suit brought by a citizen against his own state, the Supreme Court has established that a citizen cannot, under the Eleventh Amendment, sue his or her own state without the State consenting to such a suit. Moreover, Pettit has sued the State directly. He must therefore find some consent or congressional abrogation of immunity under the Fourteenth Amendment.

Pettit seeks to find a lack of immunity in various congressional acts. Although Pettit provides a lengthy list of federal statutes, he does not specify whether any of these statutes abrogated sovereign immunity. Although Pettit alleges that 42 U.S.C. § 2000d-7 abrogates the State's sovereign immunity in this case, he does not appear to be suing under any of statutes listed in § 2000d-7(a)(1). See Complaint ¶ 39, at 11-15. Moreover, even if Congress abrogated New Mexico's sovereign immunity in any of the statutes referenced in Pettit's complain, Pettit fails to allege that New Mexico has violated that particular statute as to him in this case. Listing dozens of federal statutes, as Pettit does in paragraphs 18, 39, and 40 of the Complaint, is insufficient to state a claim or to establish jurisdiction in the face of the State's sovereign immunity under the Eleventh Amendment.[6]

Pettit seems to suggest that a state merely taking federal money under any federal statute abrogates any immunity that the state may have previously enjoyed. The Court does not doubt that the State receives federal financial assistance for many state-run programs and activities. See 42 U.S.C. § 2000d-4a. Indeed, it may be true, as Pettit argues, that the State has willingly, and even

---

[6] Even if Pettit were to identify a specific federal statute that the State has violated and the violation of which has caused him injury in fact, he would also have to establish that Congress has either created a cause of action and provided a remedy, or that the Court should imply one. Pettit makes no effort to undertake this analysis.

-13-

aggressively, sought after and received numerous forms of federal financial assistance in the way of grants, matching funds, stipends, and the like in regards to an entire plethora of state-run programs and services. The Court will assume that the State directly invests some of that federal money into its state judicial and other proceedings related to domestic relations actions, specifically funding various aspects of its state judicial systems, state judges, state prosecutors, state child protection services, state domestic violence shelters, state counselors, state guardian *ad litems*, and many other aspects of domestic relations and juvenile proceedings. The Court will also assume that there are federal statutes providing appropriations and distributions for such federal monies, and requiring the states to waive immunity for committing violations of federal law, particularly of Title VI of the Civil Rights Act of 1964, which prohibits, among other things, any discrimination and/or denial of the benefits of all such programs or services.

Pettit has not, however, pointed to any federal statute that broadly mandates a state receiving federal funds will no longer be immune under the Eleventh Amendment if it discriminates against citizens in regards to race, color, ethnicity, sex, gender, religion, or age, or it interferes with, or fails to protect, the civil and constitutional rights of any citizen. At best, federal law requires that the plaintiff allege a violation of the specific program or activity receiving federal money. Here, Pettit has not done so. While he generally talks about violations of due process, of equal protection, and of other federal rights and guarantees for all United States citizens, he has not with any specificity alleged a violation of a federal statute.

Pettit is not entitled to a trial about his federal violations unless he establishes that the Court has jurisdiction over his case. Here, Pettit has not met his burden to establish that the Court has jurisdiction to hear his claims under the Eleventh Amendment. The Court will dismiss Pettit's claims

-14-

against the State pursuant to rule 12(b)(6).

## II.    LACK OF STANDING DEPRIVES THE COURT OF JURISDICTION.

Although the Eleventh Amendment requires dismissal of some, if not all, of Pettit's claims, the Court also lacks jurisdiction over Pettit's claim because he has failed to establish that he has standing over this particular case and controversy.    The Court bases this conclusion on the constitutional requirements for -- and prudential limitations on -- federal court jurisdiction.

Pettit fails to establish that he has suffered an injury in fact, a requirement under the Constitution.  Pettit's complaint is devoid of facts specific to his case on which the Court can hold that he has suffered a concrete injury to a legally protected interest.  By failing to provide even "general factual allegations of injury resulting from the defendant's conduct," Pettit, at the pleading stage, fails to establish he has standing.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. at 889.  Moreover, because Pettit does not offer any allegations that New Mexico's conduct has injured him, he does not establish that he is an adequate representative of the class, even if others may have been injured.

In addition, the domestic relations exception precludes the Court from exerting jurisdiction over some, if not all, of Pettit's claims. His claims would require the Court to make determinations about divorce, alimony and child custody decrees, a realm of the law that is left to the state courts. The Court cannot exercise jurisdiction over most, if any, of Pettit's claims.

## III.    THE **ROOKER-FELDMAN** DOCTRINE PRECLUDES THE COURT FROM REVIEWING THE STATE COURT PROCEEDINGS.

Most, if not all, of Pettit's allegations apparently stem from state court divorce and custody proceedings.  The Rooker-Feldman doctrine prohibits federal courts from acting as appellate courts to state court proceedings.  This Court, therefore, will not exercise jurisdiction over Pettit's claims

that require a direct review of the state court decisions, currently pending or otherwise decided.

**IT IS ORDERED** that the Defendant's Motion to Dismiss Complaint is granted and the

Plaintiff's Complaint is dismissed.[7]

_____
                            UNITED STATES DISTRICT JUDGE

*Counsel*:

Michael Jude Pettit
Portales, New Mexico

    *Plaintiff pro se*

Patricia A. Madrid
   Attorney General of New Mexico
David J. Tourek
David Thomson
   Assistant Attorneys General
Albuquerque, New Mexico

    *Attorneys for the Defendant*

---

[7] Because Pettit's Complaint is dismissed, his outstanding motion, Verified Motion for Certification of Class and Request for Appointment of Class Counsel, is dismissed as moot.

-16-

# **EXHIBIT 11**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RICHARD C. WEISS, etc.,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Plaintiff,　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　　CIVIL ACTION NO.  2:04cv876-A
　　　　　　　　　　　　　　　　　)
THE STATE OF ALABAMA,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendant.　　　)

## ORDER

In accordance with the Memorandum Opinion entered in this case on this date, it is

hereby ORDERED that the Motion to Dismiss (Doc. #14) is GRANTED, and this case is

DISMISSED without prejudice for want of subject matter jurisdiction.

Done this 15th day of November, 2004.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

EXHIBIT
11

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and

District of Columbia Court of Appeals v. Feldman, 460

U.S. 462 (1983)).  Donley responds to the State's

argument by noting that his complaint does not attack a

single state judgment, but is instead "a unilateral

attack upon the unconstitutional practice or policy

committed by the defendant." (Paper 12 at 8).

The complaint claims that Donley, as well as the

other members of his putative class, have each "been

previously adjudicated . . . as a 'noncustodial parent' .

. ." by a Vermont court.  (Paper 1 at 5).  As a non-

custodial parent, Donley claims that he has suffered

"grievous and irreparable losses at the hands of the

Defendant" as direct result of, *inter alia*, state court

custody and child support orders.  (Paper 1 at 8).

Indeed, it appears from the complaint that a fundamental

goal of this suit is to overturn existing state court

orders and have custody, child support and other related

matters determined under a new body of family law.  See,

e.g., id. at 38, 39 ("Plaintiffs pray this Court for

abolishment of forced/court-ordered child support . . .

.").

15

The complaint also seeks relief that may be unrelated to state court decisions.  For example, the complaint asks the Court to prohibit custodial parents from moving 60 miles away from the original family home, and to direct the establishment of "neutral visitation exchange centers."  Id. at 38-40.  Nonetheless, to the extent that the complaint asks this Court to review state court orders, the Rooker-Feldman doctrine applies and the Court lacks subject matter jurisdiction over those claims.

IV.  Motion for Class Certification

Because the Court lacks subject matter jurisdiction over Donley's claims, his motion for class certification is moot.  Moreover, the fact that Donley is proceeding pro se bars him from acting as a class representative. See Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("because pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause").  His motion for class certification and to appoint class counsel (Paper 4) is, therefore, DENIED.

V.  Request for Three-Judge Panel

Donley has also requested a three-judge panel.

16

(Paper 6). The circumstances requiring a three-judge panel are limited by statute.  See 28 U.S.C. § 2284(a). "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."  Id. The instant suit does not satisfy any of these conditions.  The request for a three-judge panel (Paper 6) is, therefore, DENIED.

VI.  Motion to Intervene and/or for Joinder

The final motion pending before the Court is the motion of George J. Malico to intervene as a plaintiff and/or to be joined as a necessary party.  (Paper 15). Because the Court has no subject matter jurisdiction to hear this case, Malico's motion is DENIED as moot.

## Conclusion

For the reasons set forth above, the State's motion to dismiss (Paper 10) is GRANTED.  Donley's motions for certification of class (Paper 4) and request for a three-judge panel (Paper 6), and Malico's motion to intervene and/or for joinder (Paper 15) are each DENIED.  This case

17

is DISMISSED for lack of jurisdiction.

Dated at Burlington, in the District of Vermont, this 8th day of February, 2005.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge, United States District Court

AO 450 (Rev. 5/85)  Judgment in a Civil Case

# United States District Court

### District of Vermont

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 FEB 8 PM 4 30

CLERK

BY _____

DEPUTY CLERK

DAVID ANTHONY DONLEY,
individually, and on behalf of all persons
similarly situated,

                Plaintiff,

        v.

STATE OF VERMONT,

             Defendant.

**JUDGMENT IN A CIVIL CASE**

CASE NUMBER: 2:04-CV-241

_____Jury Verdict. This action came before the Court for trial by jury. The issues have been
tried and the jury has rendered its verdict.

__X__Decision by Court. This action came to trial or hearing before the Court. The issues
have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that pursuant to the Court's Opinion and Order (Doc. No. 18)
filed February 8, 2005, defendant's Motion to Dismiss (Doc. No. 10) is GRANTED. This case is
DISMISSED for lack of jurisdiction.

Date:  February 8, 2005

RICHARD PAUL WASKO
Clerk

Lisa Wright
(By) Deputy Clerk

JUDGMENT ENTERED ON DOCKET
DATE: 02-08-2005

AO 72A
(Rev.8/82)

**RICHARD PAUL WASKO**
CLERK

**UNITED STATES DISTRICT COURT**
OFFICE OF THE CLERK
**DISTRICT OF VERMONT**
**FEDERAL BUILDING**
**BURLINGTON, VERMONT 05402-**
**0945**

■ BURLINGTON:
(MAIN HEADQUARTERS)
P.O. BOX 945
(802-951-6301)

■ RUTLAND 05702-0607
(DIVISIONAL OFFICE)
P.O. BOX 607
(802-773-0245)

■ BRATTLEBORO 05302-0998
(DIVISIONAL OFFICE)
P.O. BOX 998
(802-254-0250)

Civil Action No. 2:04-CV-241  Date February 8, 2005

Donley vs. State of Vermont

## NOTICE TO LITIGANTS

If you wish to appeal the enclosed judgment or order, you must file a Notice of Appeal within 30 days after date of the entry of the judgment or order appealed from (or 60 days if the United States or an officer or agency of the United States is a party). Fed.R.App.P. 4(a)(1). The fee for filing an appeal is $255.00.

If you wish to appeal but are unable to file your Notice of Appeal within 30 days [or 60 days if applicable] after the date of entry shown on line 2 below, then you have an additional 30 days to file a Motion for Extension of Time. The Motion for Extension of Time **must** be filed within the additional 30 days after the date on line 3 below. Every Motion for Extension of Time must contain an explanation which demonstrates "good cause" or "excusable neglect" for failure to file the Notice of Appeal within the time limit required. Fed.R.App.P. 4(a)(5).

**PLEASE TAKE NOTICE**

1. Judgment or Order filed                                   February 8, 2005

2. Date of Entry of Judgment or
   Order on the docket of this court                          February 8, 2005

3. Notice of Appeal **MUST** be filed
   on or before                                               March 10, 2005

*Lisa Wright*
*Deputy Clerk*

# **EXHIBIT 3**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SETH I. DONOHUE, individually, and on
behalf of all other persons similarly situated

v.                                                          C.A. No. 04-427 ML

THE STATE OF RHODE ISLAND

## MEMORANDUM AND ORDER

Plaintiff Seth I. Donohue ("Donohue") filed this pro se complaint against Defendant State
of Rhode Island ("Rhode Island") in his own behalf and on behalf of all other persons similarly
situated. Donohue alleges that Rhode Island violated both federal law and the United States
Constitution through its application of family law. He charges Rhode Island, inter alia, with
"[g]ross negligence and reckless disregard for duties owed in custody proceedings," "[refusing]
to enforce and support lawful parenting time," entering into a "conspiracy with all others of the
several States to enforce...unlawfully determined child custody orders," "[d]efrauding in regards
to child support," participating in "[w]illful, reckless, and/or negligent government
mismanagement," and engaging in "disparate taxation." He seeks injunctive relief, declaratory
relief, and money damages.

The case is before the Court on Donohue's Motion for Certification of Class and Request
for Appointment of Class Counsel, his Request for Three-Judge Panel, and his Motion for
Consolidation and Transfer by the Judicial Panel on Multi District Litigation. Rhode Island
objects to all of these motions and requests. This case also is before the Court on Rhode Island's
Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of

EXHIBIT
3

14

subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Donohue objects to this motion.

I. Discussion

A. Motion for Certification of Class

Donohue has moved to certify the following class under Rule 23 of the Federal Rules of

Civil Procedure:

> United States citizens, 18 years of age or older on the date of filing this action, with each having conceived one or more natural children, of whom any one or more of which is/are currently: (a) living; (b) residing within the jurisdiction of any court of the United States; (c) not institutionalized; and (d) of age in years so that the very existence of such child(ren) either does, or could, give present or future rise to any legal or equitable proceeding in any court for the payment, by such plaintiff, of any form of child support, to any other person or party, in any form or method heretofore established by the State of Rhode Island.
>
> Further, that each such above plaintiff has also been previously adjudicated, by any judge of any court of the State of Rhode Island, as a "noncustodial parent", [sic] or any other such similar term or phrase commonly applied to represent that such plaintiff does not equally enjoy the same full sets and degrees of physical, possessory, and legal rights to all aspects of the care, custody, and management of said child(ren) that are recognized to belong to, or enjoyed by, the other natural (commonly referred to as the "custodial") parent of said child(ren).
>
> Lastly that each such above plaintiff, in addition to the above criteria, has either: (a) never been formally convicted, in any competent court of the several States or of the United States, and by proceedings performed with absolute accordance to the full protections of all constitutional due process rights normally afforded every criminal defendant, as having been either seriously abusive, or seriously neglectful, to the health, safety, or physical or emotional welfare, of any minor child – whatsoever – but, specifically excluding from the above criteria *only* those circumstances wherein such prosecution was solely related to nonpayment of child support; or, (b) obtained full reversal, vacation, overturning, or other like purging, of each, any, and all such convictions in any one or more competent courts of the several States, or of the United States.

Rule 23(a) requires parties seeking class certification to demonstrate that: (1) the class is

2

so numerous that joinder of all parties is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the representative parties are typical of those of the class; and (4) the representative party or parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Individuals appearing pro se may not adequately represent and protect the interests of a class. See Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000) (holding that class representatives cannot appear pro se); McGrew v. Texas Bd. of Pardons & Paroles, 47 F.3d 158, 162 (5th Cir. 1995) (stating that "because [the plaintiff] is proceeding pro se and his own complaint failed to state a cause of action, his ability to serve as an adequate representative of the class is dubious"); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (denying certification of a class with a pro se representative because "the competence of a layman representing himself [is] clearly too limited to allow him to risk the rights of others"); Avery v. Powell, 695 F.Supp. 632, 643 (D.N.H. 1988) (denying class certification because "[a] pro se plaintiff may not possess the knowledge and experience necessary to protect the interests of the class as required by Rule 23(a)(4)").

Donohue seeks to represent the proposed class pro se. He is not an attorney. This Court agrees with those courts that have denied class certification in such situations. This plaintiff simply cannot adequately protect the interests of those purported class members he seeks to represent. Donohue's motion for class certification is therefore denied.

Donohue also requests that the Court appoint class counsel. There is no constitutional right to appointed counsel in civil cases. Maroni v. Pemi-Baker Reg'l Sch. Dist., 346 F.3d 247, 257 (1st Cir. 2003); Andrews v. Bechtel Power Corp., 780 F.2d 124, 137 (1st Cir. 1985). Accordingly, this request is also denied.

3

B. Motion to Dismiss

Rhode Island has moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a cause of action. It asserts that the Court may dismiss the complaint on a number of grounds, including Eleventh Amendment immunity, Younger abstention, the Rooker-Feldman doctrine, the domestic relations exception, judicial immunity, lack of standing, and failure to state a cause of action.

The Court finds that the motion and the grounds for dismissal set forth within the supporting memorandum of law have merit. In addition to the bases upon which Rhode Island rests its Motion to Dismiss, the Court finds a more fundamental flaw with Donohue's complaint.

The Court acknowledges that Donohue's status as a pro se plaintiff permits a liberal reading of his complaint. See Rodi v. Southern New England School of Law, 389 F.3d 5, 13 (1st Cir. 2004); Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000). However, pro se complaints are not immune from dismissal. Even pro se complaints must meet the requirements of Rule 8 of the Federal Rules of Civil Procedure. See Wynder v. McMahon, 360 F.3d 73, 79 n.11 (2nd Cir. 2004). Rule 8(a) requires that every complaint contain both a short and plain statement of the jurisdictional grounds for the action and a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a).

Donohue's complaint, which is one of at least forty "virtually identical" actions filed in federal courts across the country (Pl.'s Notice of Motion for Consol. and Transfer by the Judicial Panel on Multi Dist. Litig. ¶ 1) and was allegedly downloaded off of the internet (Def.'s Mem. Supp. Motion to Dismiss at 1),[1] evidences no individual expression of this particular plaintiff's

---

[1] See http://www.indianacrc.org/classaction.html (last updated Jan. 11, 2005).

claims. Once stripped of all allegations pertaining to the purported class as a whole, the complaint consists of little more than hyperbolic generalities and conclusory statements. Nowhere in the complaint does Donohue allege any facts that would define the parameters of his claim(s). In short, Donohue has simply affixed his name to a document he printed from a website. The Court therefore dismisses the complaint because it violates the mandate of Rule 8. This dismissal is without prejudice to Donohue filing, if he so chooses, a complaint that comports with Rule 8.

## II. Conclusion

For the foregoing reasons, Donohue's Motion for Certification of Class and Request for Appointment of Class Counsel is denied. Donohue's complaint is dismissed without prejudice. Donohue's Request for Three-Judge Panel and his Motion for Consolidation and Transfer by the Judicial Panel on Multi District Litigation are denied. Rhode Island's Motion to Dismiss is rendered moot in view of the Court's *sua sponte* dismissal without prejudice.

SO ORDERED.

*Mary M. Lisi*
Mary M. Lisi
United States District Judge
January 14, 2005

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

**SETH I. DONOHUE, individually, and on
behalf of all other persons similarly situated**

**v.**

**C.A. NO: 04-427ML**

**THE STATE OF RHODE ISLAND**

### JUDGMENT

[  ] Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered it's verdict.

[ X ] Decision by the Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED:

**Judgment is hereby entered for the defendant, State of Rhode Island,
against the plaintiff, Seth I. Donohue, pursuant to the Memorandum and
Order dated January 14, 2005 DENYING plaintiff's Motion for Certification of
Class and Request for Appoint of Class Counsel; DENYING plaintiff's
request for a three-judge panel and his motion for consolidation and
transfer by the judicial panel on multi-district litigation and DISMISSING
Plaintiff's complaint without prejudice.**

Enter:

*Barbara Barletta*

**Deputy Clerk**

**DATED: January 14, 2005**

# **EXHIBIT 4**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KENNETH W.R. ROHLING,

                       Plaintiff,

           v.                                1:04-CV-1083
                                             (GLS)(DRH)

STATE OF NEW YORK,

                       Defendant.

---

**DECISION and ORDER**

I.    Background

    The Clerk has sent to the Court a complaint filed by Kenneth W.R. Rohling ("plaintiff" or "Rohling").[1]  Rohling has paid the statutory filing fee for this action.

    In his *pro se* complaint, Rohling claims that New York State unlawfully discriminates against the "non-custodial parent" in "all areas of domestic relations" and especially in those areas involving child custody and child support.  Complaint at 3-5.[2]  Plaintiff also complains that disparate and preferential tax treatment is afforded to custodial parents, and that New York State has demonstrated "willful, intentional, negligent, and/or reckless patterns of general disdain for the common good."  *Id.* at 3.

---

    [1]  In addition to the complaint, plaintiff filed a motion for a three judge panel, a motion for class certification and appointment of class counsel, and a motion for consolidation and transfer of this action to the Judicial Panel on Multi-District Litigation.  Dkt. Nos. 5-7.

    [2]  Plaintiff defines "non-custodial parent" as a parent who does not "equally enjoy the same full sets and degrees of physical, possessory, and legal rights to all aspects of the care, custody and management of [his/her children] that are recognized to belong to, or enjoyed by, the other natural parent ... of said child(ren)."  *Id.* at 5.

EXHIBIT

4

Plaintiff purports to bring this action on his own behalf and on behalf of a class consisting of all New York State non-custodial parents. *Id.* at 4. The sole defendant named in the complaint is "The State of New York." The complaint seeks declaratory and injunctive relief as well as damages. *Id.* at 2, 38-41. For a complete statement of plaintiff's claims, reference is made to the complaint.

II.    Discussion

Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (district court may dismiss frivolous complaint *sua sponte* notwithstanding fact that plaintiff has paid statutory filing fee); *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (district court has power to dismiss a complaint *sua sponte* if the complaint is frivolous).

The Eleventh Amendment to the United States Constitution prohibits federal courts from exercising jurisdiction over suits against non-consenting states. *See* U.S. Const., Amend. XI; *Hans v. Louisiana*, 134 U.S. 1 (1890); *Farid v. Smith*, 850 F.2d 917, 920-21 (2d Cir. 1988); *Amankwaah v. Cayuga County*, 1992 WL 296459 at *2-3 (N.D.N.Y. Oct. 16, 1995) (McCurn, C.J.). As noted, the sole defendant named in the

2

complaint is the State of New York.  New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint.[3]  Moreover, while there are cases in which Congress has abrogated the Eleventh Amendment to allow a party to sue a state for constitutional violations,[4] there has been no abrogation with respect to the claims asserted in this case.

The State of New York is absolutely immune from suit on plaintiff's claims and the complaint is therefore dismissed as frivolous.

Dismissal of plaintiff's complaint is also required because this Court lacks subject matter jurisdiction over plaintiff's claims.  The jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332.  Under these statutes, federal jurisdiction is available only when a federal question is presented or when the parties are of diverse citizenship and the amount in question exceeds $75,000.  It is well established that the Court may raise the question of jurisdiction *sua sponte*, and that where jurisdiction is lacking, "dismissal is mandatory."  *United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *see also* Fed. R. Civ. P. 12(h)(3).

The complaint does not establish a basis for federal jurisdiction under 28 U.S.C. § 1332.  Diversity jurisdiction exists only if there is diversity of citizenship between the

---

[3] The state's immunity is absolute and precludes plaintiff's claims that the state has "vicarious liability, and/or liability as respondeat superior" for actions taken by state officials.  See Complaint at 6.

[4] See *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666 (1976) (Eleventh Amendment not a bar to award of damages to state employees discriminated against on the basis of sex in violation of Civil Rights Act of 1964).

parties and the matter in controversy exceeds the sum or value of $75,000. *See* 28 U.S.C. §1332(a). Here, because both the plaintiff and the defendant are citizens of New York, there is no diversity.

"Federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." *Village of Millbrook v. Forrest*, 903 F.Supp. 599, 600 (S.D.N.Y. 1995) (quoting *State of New York v. White*, 528 F.2d 336, 338 (2d Cir. 1975)).

Plaintiff's complaint arises out of the application of New York state law and the outcome of New York State judicial proceedings in the area of domestic relations. Federal courts generally lack subject matter jurisdiction over such claims:

> A century ago,..., the Supreme Court, sagely circumscribed the jurisdiction of federal courts as regards domestic relations when it held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ex parte Burris*, 136 U.S. 586, 594, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890). ... This Court applied this principle in *Lhotan v. D'elia*, 415 F.Supp. 826 (E.D.N.Y. 1976) when it held "[f]ederal courts do not adjudicate cases involving the custody of minors or rights of visitation [because t]hat is the function of the States." *Id.* at 827 (dismissing foster parents' suit seeking writ of habeas corpus requiring director of county department of social services to direct placement of foster children).

*Neustein v. Orbach*, 732 F.Supp. 333, 339 (E.D.N.Y. 1990). *See also Martin v. Chiles*, 63 F.Supp. 133, 136 (S.D.Fla. 1991) (federal courts generally dismiss cases involving divorce, alimony, child custody, visitation rights and enforcement of separation or divorce decrees still subject to state court modification).[5]

---

[5] The *Neustein* court noted that "on rare occasions, the federal courts have gingerly forayed into the domestic relations arena but only to resolve claims that are traditionally adjudicated in federal court." 732 F.Supp. at 339. Plaintiff's claims, however, appear to fall squarely within the domestic relations exception to the exercise of federal

4

In addition, plaintiff has failed to establish that he has standing to maintain this action. To establish standing, plaintiff must demonstrate that the actions of the defendant caused him to suffer an "injury in fact" which a favorable decision in this action is likely to redress. See *Northeastern Fl. Contractors v. Jacksonville*, 508 U.S. 656, 663064, 113 S.Ct. 2297 (1993). Although plaintiff purports to complain generally about the implementation of New York state domestic relations law, his injury, if any, appears to stem directly from state court proceedings as to which this court lacks jurisdiction. Federal district courts "do not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-16, 44 S.Ct. 149, 150 (1923). This principal of comity has become known as the Rooker-Feldman doctrine. The essence of the Rooker-Feldman doctrine is that inferior federal courts have no authority to review judgments of state courts in judicial proceedings and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court. *Phifer v. City of New York*, 289 F.3d 49, 55-56 (2d Cir. 2002); *Rogers-Fink v. Cortland County Dep't of Social Servs.*, 855 F.Supp. 45, 47 (N.D.N.Y. 1994) (Scullin, J.).[6] Because this Court lacks jurisdiction to review

---

jurisdiction.

[6] In addition, although the status of the state court proceedings complained of by plaintiff cannot be determined from the complaint herein, this Court's declination to consider plaintiff's claims may well also be mandated by the precepts of federalism and comity enunciated in *Younger v. Harris*, 401 U.S. 37 (1971). *See Neustein v. Orbach*, 732 F.Supp. 333, 341 (E.D.N.Y. 1990). Moreover, any attempt by plaintiff to relitigate matters already decided in state court proceedings would be precluded by the doctrines of res

5

plaintiff's claims and to redress any injury he might have suffered by virtue of the alleged unconstitutionality of New York state domestic relations law, the Court finds that plaintiff lacks standing to maintain this action.[7]

WHEREFORE, it is hereby

ORDERED, that the complaint is dismissed as frivolous, and it is further

ORDERED, that in light of the dismissal of this action, plaintiff's motions for a three judge panel (Dkt. No. 5), for class certification and counsel (Dkt. No. 6), and for consolidation and transfer to the Judicial Panel on Multi-District Litigation (Dkt. No. 7) are denied as moot, and it is further

ORDERED, that the Clerk serve a copy of this Decision and Order on Rohling by regular mail.

IT IS SO ORDERED.

Dated: November 15, 2004
Albany, New York

Gary L. Sharpe
U.S. District Judge

---

judicata and collateral estoppel. *Id.* at 342.

[7] See *Loose v. Texas*, No.4:03-CV-266-Y, 2004 WL 579713 * 1 (N.D. Tex. Mar. 19, 2004) (plaintiff lacks standing to maintain general constitutional challenge to Texas child custody statutes).

6

# **EXHIBIT 1**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KARL L. AMMANN,                         :
                                        :
                    Plaintiff,          :     . NO. 3:04CV1647 (MRK)
                                        :
        v.                              :
                                        :
STATE OF CONNECTICUT,                   :
                                        :
                    Defendant.          :

## <u>RULING AND ORDER</u>

Pending before the Court is the State of Connecticut's Motion to Dismiss [**doc. #11**]

seeking to dismiss Mr. Ammann's complaint in its entirety. Mr. Amman has not filed any

response to the State's motion. For the reasons stated below, the Court GRANTS the State's

Motion to Dismiss [**doc. #11**].

It is well established that a *pro se* complaint "should not be dismissed unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

entitle him to relief. " *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Thus, when considering

motions to dismiss a *pro se* complaint such as this, "courts must construe [the complaint]

broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Cruz v. Gomez*, 202

F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted). This is particularly true when

dealing with *pro se* complaints alleging civil rights violations. *See Weinstein v. Albright*, 261

F.3d 127, 132 (2d Cir. 2001).

As best the Court can tell after navigating through Mr. Ammann's forty-six page

-1-



EXHIBIT

complaint,[1] Mr. Ammann purports to bring a class action lawsuit on behalf of other non-custodial

parents who like him, have allegedly been denied certain rights as a result of their non-custodial

status. *See* Compl. [doc. #1] at 1-8. Whether or not the allegations in Mr. Ammann's complaint

give rise to a federal cause of action at all (and the Court seriously doubts that they do) Mr.

Ammann's case must be dismissed because the State, the sole defendant in this suit, is immune

from suit under the Eleventh Amendment doctrine of sovereign immunity.[2]

The Supreme Court has construed the Eleventh Amendment to bar lawsuits by citizens

against non-consenting states. As the Supreme Court held in its key decision in *Seminole Tribe*

*of Fl. v. Florida*, 517 U.S. 44 (1996), "[a]lthough a case may arise under the Constitution and

laws of the United States, the judicial power does not extend to it if the suit is sought to be

prosecuted against a State, without her consent, by one of her own citizens." *Id* at 68. A state

waives its immunity only by an unequivocal expression or action. *Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 99 (1984). Connecticut has not consented to suit under any of the

---

[1] Mr. Ammann's complaint includes entire pages that appear to the Court entirely relevant to the claims that Mr. Ammann seeks to assert. In fact, the complaint appears to be a standardized form available on the internet from a website owned by an organization called the Indiana Civil Rights Council that is recruiting plaintiffs around the country for identical lawsuits in every state. *See* Class Actions *at* http://www.indianacrc.org/classaction.html.

[2] At least four federal district courts in which a version of this complaint has been filed have reached the same conclusion as this Court, dismissing the complaint on grounds of sovereign immunity. *See Collins v. Kentucky*, No. 04CV66 (JHM), *slip op. at* 1-2 (E.D.Ky. Nov. 18, 2004) ("[Kentucky]'s Eleventh Amendment immunity claim is a valid defense" to plaintiff's "internet-generated civil rights complaint"); *Rohling v. New York*, No. 1:04CV1083(GLS)(DRH), *slip op. at* 3 (N.D.N.Y. Nov. 15, 2004) ("New York has not waived its immunity from suit on the claims asserted in plaintiff's complaint."); *Weiss v. Alabama*, No. 2:04CV876-A, *slip op. at* 3-4 (M.D.Ala. Nov. 15, 2004) (same result); *Ramey v. Alaska*, No. A04-0215CV (JWS), *slip op. at* 7 (D. Alaska Nov. 2, 2004) (Plaintiff's "action against Alaska is barred by Eleventh Amendment immunity).

-2-

applicable statutes that Mr. Ammann names.

It is well established that the civil rights statutes cited by Mr. Ammann, 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, do not abrogate a state's sovereign immunity. *See Coger v. Connecticut*, 309 F. Supp. 2d 274, 281 (D. Conn. 2004) ("[C]ourts have held that Congress has not abrogated the state's immunity from suit under 42 U.S.C. § 1981 or 1983" and "the State of Connecticut has not waived its sovereign immunity under those statutes.") (internal quotation marks and citations omitted). Courts have reached the same conclusion about § 1985 and § 1986. *See, e.g., Seibert v. Oklahoma*, 867 F.2d 591, 594 (10th Cir. 1989), *abrogated on other grounds by Federal Lands Legal Consort. ex rel. Robart Estate v. United States.*, 195 F.3d 1190 (10th Cir. 1999). Section 1988 is a provision that allows a successful civil rights plaintiff to obtain attorneys fees. Although there is a narrow category of cases where sovereign immunity would not shield a state from a claim for attorneys fees pursuant to Section 1988, nothing in this case would implicate the exception. *See Hutto v. Finney*, 437 U.S. 678, 693-95 (1978) (attorneys fees properly awarded under § 1988 against state department of correction in civil rights suit against certain corrections officials seeking injunctive relief). And finally, 42 U.S.C. § 1994 is a statute that abolishes peonage, and even after an extremely liberal reading of the Complaint, the Court cannot discern how this statute could possibly apply to Mr. Ammann's case. *See Piorkowski v. Parziale*, No. 3:02CV00963 (GLG), 2003 WL 21037353, at *9 (D. Conn. May 7, 2003) ("42 U.S.C. § 1994 . . . is not relevant here because the plaintiff has proffered no facts to suggest a claim of peonage.").

The remaining statutes that Mr. Ammann cites, 18 U.S.C. §§ 241 and 242, and 28 U.S.C. §§ 1443 and 1657, are inapplicable to Mr. Ammann's case and by their nature, do not abrogate a

state's sovereign immunity. Sections 241 and 242 of Title 18 are criminal statutes and as such, they "do not provide private causes of action." *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). Moreover, these statutes apply only to individuals and thus have no bearing on a state's sovereign immunity. Similarly, 28 U.S.C. §§ 1443 and 1657 are procedural provisions governing removal of cases and the priority of certain actions for injunctive relief, and also do not provide any private right of action, nor do they affect the sovereign immunity of a state in any way. Accordingly, Mr. Ammann has failed to state a claim under any of the statutes that he cites in his Complaint and therefore, the Court dismisses the Complaint in its entirety.

However, the Court will allow Mr. Ammann an opportunity to amend his complaint in order to name an appropriate defendant. Any amended complaint that Mr. Ammann wishes to file must be filed with the Court and served on any new defendants that Mr. Ammann names on or before **March 10, 2005. The Court advises Mr. Ammann that failure to comply with this deadline will result in termination of this action.**

For the benefit of Mr. Ammann, the Court notes that a party seeking to vindicate federal constitutional rights can, in a proper case, avoid Eleventh Amendment immunity in two ways. First, in some circumstances, a plaintiff may be able to obtain prospective injunctive relief against a state official engaged in an ongoing violation of federal law. The Supreme Court's decision in *Ex Parte Young*, 209 U.S. 123 (1908), creates "a limited exception to the general principle of sovereign immunity[, which] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment." *Ford v.*

-4-

*Reynolds,* 316 F.3d 351, 354-55 (2d Cir. 2003). Second, while the Eleventh Amendment also

bars claims for damages against state officials in their official capacities, in a proper case, a

plaintiff may be able to sue a state actor for damages under § 1983 for violating a plaintiff's

constitutional rights under color of state law, so long as the state official is sued in his or her

*individual*, as opposed to *official*, capacity. *See Hafer v. Melo*, 502 U.S. 21, 23 (1991).

The Court emphasizes that it expresses no view on whether any amended complaint Mr.

Ammann may file will survive a motion to dismiss. In particular, the Court cautions Mr.

Ammann that to the extent he seeks reversal of a state court decision regarding custody of his

minor children or his child support obligations, any such action is likely barred by a doctrine

known as the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine provides that lower

federal courts [such as this Court] lack subject matter jurisdiction over a case if the exercise of

jurisdiction over that case would result in reversal or modification of a state court judgment."

*Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998).

Finally, the Court advises Mr. Ammann that a class action cannot be maintained by a

*pro se* plaintiff. *See, e.g., Daniels v. Niagara Mohawk Power Corp.*, No. 04-CV-0734S(SC),

2004 WL 2315088, at *1 (W.D.N.Y. Oct. 12, 2004) (non-attorneys cannot represent anyone other

than themselves and cannot prosecute class actions on behalf of others) (citing 28 U.S.C. §

1654). Therefore, unless and until Mr. Ammann retains a lawyer, the Court will treat his lawsuit

as an individual suit on behalf of himself only.

In conclusion, the Court GRANTS Defendant's Motion to Dismiss [**doc. #11**]. And in

light of the Court's ruling, the Court DENIES AS MOOT, Plaintiff's Motion to Appoint

Counsel/Certify Class [**doc. #4**], Motion for Consolidation and Transfer [**doc. #5**], and Verified

Request for a Three Judge Panel [**doc. #6**].

IT IS SO ORDERED.

/s/ _____Mark R. Kravitz_____
United States District Judge

Dated at New Haven, Connecticut: **February 10, 2005**.

-6-

# **EXHIBIT 2**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David Anthony Donley,          :
              Plaintiff,[1]    :
                               :
      v.                       :        File No. 2:04-CV-241
                               :
State of Vermont,              :
              Defendant.       :

## OPINION AND ORDER
(Papers 4, 6, 10 and 15)

Plaintiff David Donley, proceeding *pro se*, brings this action against the State of Vermont claiming that the State's family laws, including provisions related to child custody and child support, are constitutionally invalid. In his complaint, Donley states that he is suing on behalf of himself and a putative class of persons, all of whom are allegedly non-custodial parents residing in Vermont. As explained below, the Court takes judicial notice of the fact that nearly identical actions have been filed in other federal districts.

The State has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction,

---

[1] The caption of the complaint in this case names a putative class of "all persons similarly situated" as additional plaintiffs. As set forth below, the Court denies Donley's motion to certify a class. These persons, therefore, are not included in the Court's case caption.



or alternatively under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted. (Paper 10).   In support of its jurisdiction argument, the State cites the Eleventh Amendment, the <u>Rooker</u>-<u>Feldman</u> doctrine, standing, and the "domestic relations exception."   <u>Id.</u>   The State further argues, under Rule 12(b)(6), that it is not susceptible to suit under 42 U.S.C. § 1983, and that Donley's complaint, which contains few specific facts and is largely generalized to all non-custodial parents, fails to allege sufficient facts to support his claims.

For the reasons set forth below, the State's motion to dismiss (Paper 10) is GRANTED, all remaining motions (Papers 4, 6 and 15) are DENIED, and this case is DISMISSED for lack of jurisdiction.

## Background

Donley has filed a 42-page, verified complaint on behalf of himself and others in an effort "to vindicate and restore various rights of the Plaintiffs secured under federal law . . . ."   (Paper 1 at 1). Specifically, the "case involves applications of family law in a general nature, wherein rightful custody of

2

minor children is in dispute between natural parents . . . ." <u>Id.</u> at 2.  The complaint alleges that the State is responsible for "thwarting the rightful and lawful conclusions of due process during any such child custody proceedings held within its own courts of law." <u>Id.</u>

In essence, the complaint alleges that state family laws, including provisions for child custody and child support payments, violate the non-custodial parent's federal rights.  The complaint asserts this claim and related claims in six separate counts.  Count I, entitled "Gross Negligence and Reckless Disregard for Duties Owed in Custody," claims that the "best interest of the child" standard is impermissibly vague.  Count I also alleges that custody should be determined according to a strict scrutiny standard, and that parents should only be deprived of custody for a "strongly compelling reason." <u>Id.</u> at 20.

Count II of the complaint, entitled "Refusals to Enforce and Support Lawful Parenting Time," claims in part that while depriving parents of equal access to their children is unlawful, this wrong is compounded by the fact that the custody and visitation schedules

3

mandated by the State are poorly enforced. <u>Id.</u> at 22-24.
In Count III, Donley claims that there is a conspiracy
among the states to enforce the allegedly unlawful
custody orders of its fellow states. <u>Id.</u> at 24-26.
Count IV charges, in part, that the states have no right
to order child support, since it is "the right of any fit
natural parent to best determine the appropriate amount
of spending upon his or her children without undue
interference by the state . . . ." <u>Id.</u> at 26-27.    In
Count V, Donley objects to the fact that custodial
parents are taxed differently than non-custodial parents.
Finally, Count VI of the complaint alleges broadly that
the State has "engaged in a general pattern of serious
mismanagement of society and taxation." <u>Id.</u> at 33.

Donley claims that he is bringing this action as a
person who has "conceived one or more natural children,"
and that the existence of such child or children "either
does, or could, give present or future rise to any legal
or equitable proceeding in any court for the payment, by
such plaintiff, of any form of child support." <u>Id.</u> at 4.
Donley also claims that he and a putative class of
plaintiffs have suffered "grievous and irreparable losses

4

at the hand of the Defendants, due to continuing unlawful deprivations of relationships with their minor children . . . ." _Id._ at 8. The complaint seeks both damages and injunctive relief, including the "restoration/elevation to equal custodial status for all 'fit' (no proven abuse/neglect of kids) noncustodials," and the abolishment of court-ordered child support "in most cases." _Id._ at 38-41.[2]

---

[2]     The State requests that the Court take judicial notice of numerous opinions from other jurisdictions that have dismissed complaints similar to the one presented here. (Paper 10 at 5, citing _Collins v. Kentucky_, Docket No. 04-CV-66-JMH, Mem. Opinion and Order (E.D. Ky. Oct. 22, 2004) (dismissing for lack of standing and insufficient pleading), _Weiss v. Alabama_, Docket No. 2:04cv876-A, Mem. Opinion and Order (M.D. Ala. Nov. 15, 2004) (dismissing based upon Eleventh Amendment immunity), and _Urbank v. New Jersey_, Docket No. 04-4557(MLC) (D.N.J. Oct. 25, 2004) (ordering plaintiff to show cause why case should not be dismissed under _Rooker-Feldman_ doctrine or _Younger_ abstention)); (Paper 13, Attachments); (Paper 17, Attachments). The State also notes that Donley's complaint is a largely "pre-packaged complaint posted on a website that has been promoting, and recruiting plaintiffs for, identical _pro se_ lawsuits in federal court in each of the fifty states." (Paper 10 at 2).

On a motion to dismiss, a Court must accept the facts as stated in the complaint, but may also consider facts of which it may take judicial notice. _See_ _Brass v. American Film Technologies, Inc._, 987 F.2d 142, 150 (2d Cir. 1993). Moreover, when a motion to dismiss challenges a complaint on grounds of subject matter jurisdiction, review of facts extrinsic to the complaint is appropriate, and the motion need not be converted to one for summary judgment. _See_ _Phifer v. City of New_

5

Discussion

I.  Motion to Dismiss Standard

On a motion to dismiss, the Court must read the
plaintiff's complaint with generosity.  See Bolt Elec.,
Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir.
1995).  Taking the allegations in the complaint as true,
the court must construe the complaint in the light most
favorable to the plaintiff, and must draw all inferences
in the plaintiff's favor.  See Warth v. Seldin, 422 U.S.
490, 502 (1975); Cosmas v. Hassett, 886 F.2d 8, 11 (2d
Cir. 1989).  The complaint must not be dismissed unless

----

York, 289 F.3d 49, 55 (2d Cir. 2002); Kamen v. American
Telephone & Telegraph Co., 791 F.3d 1006, 1010-11 (2d
Cir. 1986).  Court orders and published websites are both
matters of which courts have taken judicial notice in
certain circumstances.  See, e.g., Heathcote Assocs. v.
Chittenden Trust Co., 958 F. Supp. 182, 185 (D. Vt. 1997)
(taking judicial notice of state court order of which
plaintiff had notice); Hotel Employees and Restaurants
Union v. City of New York Dep't of Parks and Recreation,
311 F.3d 534, 459 (2d Cir. 2002) ("may be appropriate" to
take judicial notice of defendant's website where
authenticity of website is not disputed).

In this case, Donley does not dispute that his
complaint originated from a website, or that actions have
been filed in other federal courts and that some courts
have issued rulings in those cases.  This Court,
therefore, will take judicial notice of these facts.  The
Court notes, however, that its decision in this case is
not affected by either the decisions of its sister courts
or the fact that Donley's complaint was largely copied
from a website.

"'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

There is an important difference between disposing of a case on a motion to dismiss and resolving the case later in the proceedings, for example by summary judgment. See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998). On a motion to dismiss, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Id. (citations and internal quotation marks omitted). Moreover, pro se complaints are to be construed more liberally than complaints drafted by trained attorneys. Haines v. Kerner, 404 U.S. 519, 520 (1972).

Before the Court can consider the merits of the plaintiff's action, it must have subject matter jurisdiction. "The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception, for jurisdiction is power to declare

7

the law" and "without jurisdiction the court cannot proceed at all in any cause." Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 94-95 (1998) (citations omitted). When a federal court's jurisdiction has been called into question, that jurisdiction must be shown affirmatively, and cannot be established through favorable inferences in the pleadings of the party asserting it. See Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citation omitted). "Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3); see Shipping Financial Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

II.  Sovereign Immunity

The Eleventh Amendment to the United States Constitution bars suits by private citizens against a state or its agencies in federal court unless the state has waived or Congress has overridden the state's sovereign immunity. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984). The text of the

8

Amendment provides:

> The Judicial Power of the United States shall
> not . . . extend to any suit in law or equity,
> commenced or prosecuted against one of the
> United States by Citizens of another State, or
> by Citizens or Subject of any Foreign State.

The Eleventh Amendment does more than limit the

jurisdiction of Article III courts by barring such

courts' jurisdiction over a State.  See Close v. New

York, 125 F.3d 31, 39 (2d Cir. 1997).  It has long been

understood "'to stand not so much for what it says, but

for the presupposition . . . which it confirms.'"

Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996)

(quoting Blatchford v. Native Village, 501 U.S. 775, 779

(1991)).  This presupposition is that: (1) each State in

the federal system is a sovereign entity, and (2) "that

it is inherent in the nature of sovereignty not to be

amenable to the suit of an individual without its

consent."  Seminole Tribe, 501 U.S. at 779 (internal

quotations and citations omitted); see also Alden v.

Maine, 527 U.S. 706, 713 (1999) ("State's immunity from

suit is a fundamental aspect of the sovereignty which the

States enjoyed before the Constitution's ratification,

and which they retain today . . . .").  Moreover, the

9

Eleventh Amendment bars the federal court's jurisdiction over a state regardless of the nature of the requested relief. Seminole Tribe, 517 U.S. at 58 ("we have often made clear that the relief sought by a plaintiff suing a State is irrelevant to the question of whether the suit is barred by the Eleventh Amendment); see also Pennhurst, 465 U.S. at 102.

A state can only waive its sovereign immunity by unequivocal expressions or actions. See id. at 99. Similarly, Congress can waive state sovereign immunity only where it has unequivocally expressed its intent to abrogate the immunity and where it acted pursuant to a valid exercise of power. See Seminole Tribe, 517 U.S. at 55. In this case, it is clear that neither Vermont nor Congress has waived Vermont's sovereign immunity with respect to constitutional claims against state agencies or officials.

As to Vermont law, the Vermont Tort Claims Act specifically reserves the state's Eleventh Amendment immunity. See 12 V.S.A. § 5601(g). Donley cites no statutory authority in Vermont law that waives sovereign immunity for this type of case.

10

With respect to Donley's claims under federal law, none of the laws or statutes he cites abrogates state sovereign immunity.  Donley first cites 18 U.S.C. §§ 241 and 242, each of which is a criminal statute that does not even create a private right of action.  (Paper 1 at 12); see Powers v. Karen, 768 F. Supp. 46, 51 (E.D.N.Y. 1991), aff'd 963 F.2d 1522 (2d Cir. 1992).  He next cites a series of civil rights statutes, including 42 U.S.C. §§ 1981, 1985, 1986, 1988 and 1994.  (Paper 1 at 12-15).  While these statutes provide causes of action for violations of federal constitutional rights, they do not contain waivers of state sovereign immunity.  See, e.g., Ellis v. Univ. of Kansas Med. Ctr., 163 F.3d 1186, 196 (10th Cir. 1998) (§ 1985 does not abrogate Eleventh Amendment immunity); Williams v. Bennett, 689 F.2d 1370, 1376-77 (11th Cir. 1982) (state board of corrections immune from damage suits brought under §§ 1983, 1985, and 1986), cert. denied, 464 U.S. 932 (1983); Sessions v. Rusk State Hosp., 648 F.2d 1066, 1069 (5th Cir. 1981) (§ 1981).[3]  Donley also cites 28 U.S.C. §§ 1443 and 1657.

---

[3]  Although there is some authority for granting attorney's fees against state agencies under § 1988, such an award would require success on substantive grounds, and therefore will not be at issue here.  See Hutto v.

11

As the State properly argues, these "are procedural
provisions and, by their own terms, do not abrogate a
state's Eleventh Amendment immunity." (Paper 10 at 7,
citing Wolpoff v. Cuomo, 792 F. Supp. 964, 967 (S.D.N.Y.
1992) and Carreras Roena v. Camara De Comerciantes
Mayoristas, Inc., 440 F. Supp. 217, 219 (D.P.R. 1976)).

Finally, Donley cites a host of federal statutes
which, he claims, "include . . . binding rules of law
upon the several States." (Paper 1 at 15). The
complaint appears to cite these statutes in an effort to
show that family law is not strictly a matter of state
law. Id. at 16. The complaint does not, however, allege
that Vermont has violated these laws, or that the cited
statutes have abrogated state sovereign immunity.

In response to the State's assertion of immunity
under the Eleventh Amendment, Donley argues that the
Eleventh Amendment is irrelevant, since the language of
the Amendment merely provides protection against suit in
the State's own courts without its consent. (Paper 12 at
4). The Supreme Court has explained that "[t]o rest on

---

Finney, 437 U.S. 678, 693-95 (1978) (attorneys fees
properly awarded under section 1988 against state
Department of Corrections in civil rights suit seeking
injunctive relief).

the words of the Amendment alone would be to engage in
the type of ahistorical literalism we have rejected in
interpreting the scope of the States' sovereign immunity
. . . ." <u>Alden</u>, 527 U.S. at 730. (citations omitted).

> The Eleventh Amendment confirmed rather than
> established sovereign immunity as a
> constitutional principle; it follows that the
> scope of the States' immunity from suit is
> demarcated not by the text of the Amendment
> alone but by fundamental postulates implicit in
> the constitutional design.

<u>Id.</u> at 728-29.  Those "postulates" include the States'
rights as sovereigns not to be sued in federal court.
<u>Id.</u> at 729.  Accordingly, Donley's argument that the
Eleventh Amendment does not apply to suits filed in
federal court is misplaced.

Donley further contends that Eleventh Amendment
immunity has been abrogated under 42 U.S.C. § 2000d-7.
(Paper 12 at 3-4).  This argument is also without merit,
since Donley's suit is not brought pursuant to any of the
statutes cited in § 2000d-7.  Title 42 U.S.C. § 2000d-7
waives state sovereign immunity for violations of section
504 of the Rehabilitation Act of 1973, title IX of the
Education Amendments of 1972, the Age Discrimination Act
of 1975, "or the provision of any other Federal statute

13

prohibiting discrimination by recipients of Federal financial assistance." Again, the complaint in this case is not brought pursuant to any of the cited statutes. Nor does it allege a cause of action under a federal statute prohibiting discrimination by recipients of federal financial assistance.

In sum, the State of Vermont is immune from suit in this Court, as Donley has failed to show either waiver by the State or an applicable abrogation of Eleventh Amendment immunity by Congress. His complaint must, therefore, be DISMISSED for lack of subject matter jurisdiction.

III. *Rooker-Feldman* Doctrine

The State further argues that this Court lacks subject matter jurisdiction by virtue of the Rooker-Feldman doctrine. (Paper 10 at 8-10). The Rooker-Feldman doctrine provides that "inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004) (citing

14